**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0324-17T4

CAROLINE MYLETT,

      Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR
and CARYN MAX
SALON WEST, LLC,

      Respondents.

_____

Submitted January 29, 2019 – Decided February 8, 2019

Before Judges Hoffman and Firko.

On appeal from the Board of Review, Department of Labor and Workforce Development, Docket No. 119,229.

Caroline Mylett, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Shareef M. Omar, Deputy Attorney General, on the brief).

Respondent Caryn Max Salon, LLC, has not filed a brief.

PER CURIAM

Claimant appeals from the August 4, 2017 final decision of the Board of Review (Board) disqualifying her from receiving unemployment benefits after finding she left work voluntarily without good cause attributable to her work. Because the Board's factual findings were not supported by substantial credible evidence, and the Board overlooked contrary evidence, we reverse.

Our review of administrative agency decisions is limited. In re Stallworth, 208 N.J. 182, 194 (2011). We will not reverse an agency's decision unless it is arbitrary, capricious, or unreasonable. Ibid. Agency action is arbitrary, capricious, and unreasonable if the record does not contain substantial credible evidence to support the findings on which the agency based its decision. Ibid. Additionally, when "an agency 'overlook[s] or undervaluat[es] . . . crucial evidence,' a reviewing court may set aside the agency's decision." Cottman v. Bd. of Review, 454 N.J. Super. 166, 171 (App. Div. 2018) (alterations in original) (quoting Trantino v. N.J. State Parole Bd., 166 N.J. 113, 192 (2001)).

We "must also give due regard to the opportunity of the one who heard the witnesses to judge their credibility." Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997). The Board has "the authority to make

different credibility assessments" than the Tribunal "where the record is open to competing interpretations." Messick v. Bd. of Review, 420 N.J. Super. 321, 330 (App. Div. 2011). We recognize, however, that if the Board did not hear the evidence directly, it is "in a poor position to determine the credibility of the claimant." Logan, 299 N.J. Super. at 348.

New Jersey's Unemployment Compensation Law disqualifies a person from receiving unemployment benefits if he or she "left work voluntarily without good cause attributable to such work." N.J.S.A. 43:21-5(a). The phrase "good cause attributable to such work" is defined as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." N.J.A.C. 12:17-9.1(b). "The test of 'ordinary common sense and prudence' must be utilized to determine whether an employee's decision to leave work constitutes good cause." Brady v. Bd. of Review, 152 N.J. 197, 214 (1997) (quoting Zielenski v. Bd. of Review, 85 N.J. Super. 46, 52 (App. Div. 1964)). The employee bears the burden of proof to establish good cause. Id. at 218; N.J.A.C. 12:17-9.1(c).

N.J.S.A. 43:21-5(a) "protects not only workers who are involuntarily unemployed—those who are laid-off or terminated from their jobs by their employers—but also those who voluntarily quit their jobs for good cause

A-0324-17T4

attributable to their work." Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 543-44 (2008). Because an employee "has the 'responsibility to do whatever is necessary and reasonable in order to remain employed.[,]'" ibid. (quoting Heulitt v. Bd. of Review, 300 N.J. Super. 407, 414 (App. Div. 1997)), however, the employee's decision to quit "'must be compelled by real, substantial and reasonable circumstances not imaginary, trifling, and whimsical ones.'" Ibid. (quoting Domenico v. Bd. of Review, 192 N.J. Super. 284, 288 (App. Div. 1983)).

If "an employee knows that he or she is about to be fired, the employee may quit without becoming ineligible." Cottman, 454 N.J. Super. at 170. Thus, "an employee need not wait to be fired when discharge is imminent[,]" but instead "may resign and still be eligible for benefits." Id. at 172-73. The determination of whether a worker quit in the face of being fired calls for a fact-sensitive analysis "of all relevant factors . . . ." Utley, 194 N.J. at 548. The facts must "'indicate a strong probability that fears about the employee's job security will in fact materialize, that serious impending threats to [the employee's] job will be realized, and that the employee's belief that his [or her] job is imminently threatened is well founded.'" Shuster v. Bd. of Review, 396 N.J. Super. 240,

245 (App. Div. 2007) (quoting Fernandez v. Bd. of Review, 304 N.J. Super. 603, 606 (App. Div. 1997)).

Appellant worked as a bookkeeper for Caryn Max Salon West, LLC, from April 20, 2011, through April 5, 2017.[1] On Tuesday March 28, 2017, Caryn Procaccini, the owner of the salon, held a staff meeting to institute a new "gossip policy" because she perceived "negativity in the salon." The following day, another employee gave claimant an eyebrow service, during which they discussed the new gossip policy and also discussed a client who was not happy with the services she received. Unbeknownst to them, Procaccini listened to their conversation from the other side of a closed door, and believed that they violated the new gossip policy.

When the eyebrow service concluded, Procaccini approached claimant and told her that she wanted to meet with her, but the two were unable to meet that day. Claimant testified that when she arrived at work the following Monday, "everything," including her desk and other "stuff," was cleared out, and her file cabinets were locked. Claimant did her usual payroll work that day.

---

[1] The number of "inaudible" notations in the transcript makes it hard to discern the testimony and hinders our review.

A-0324-17T4

Claimant and Procaccini finally met on the morning of Wednesday April 5, 2017. Procaccini began by asking claimant numerous questions, including what work she still needed to finish that week, how much the salon paid for its cleaning service, and how to access files on the computer. Fearing that she was going to be fired "any minute," claimant quit. Procaccini then produced a letter of resignation and asked appellant to sign it, but claimant refused. Claimant testified that she later learned that Procaccini had already hired a new bookkeeper who started the same day that claimant separated from her employment.

Procaccini testified that claimant was required to clock out and get a manager's approval before getting any "personal service", which she did not do. Procaccini also said that she overheard claimant discussing the staff meeting and new gossip policy while getting her eyebrows treatment, which Procaccini believed violated the new gossip policy.

Procaccini admitted that she cleared out the office that she shared with claimant. She said that she had cleaned out the office previously, but later clarified that although she swept it out "occasionally," she never before "did a detail of it" like she did on this occasion. She denied purposely removing the desktop icons on claimant's computer, claiming that she "backed up" claimant's

6

computer and the files were inadvertently minimized. She also explained that she locked the file cabinets containing employee personnel files because she did not want anyone else to have access to her employees' personal information, and that she had requested that claimant do so in the past.

Procaccini said she asked claimant questions about bookkeeping, computer passwords, and company procedures when they met because she had to "protect [her]self" in case claimant quit. Procaccini insisted that she hired the new employee as a receptionist before claimant separated from employment, and "low and behold" the new employee had some background in bookkeeping and "took over right away." Procaccini maintained that she did not fire claimant and that claimant quit voluntarily.

On June 13, 2017, the Appeal Tribunal (Tribunal) concluded that claimant was entitled to unemployment benefits because she did not leave her job voluntarily without good cause attributable to the work under N.J.S.A. 43:21-5(a). Instead, it found that Procaccini's actions supported claimant's belief that "her discharge was imminent" and claimant "resigned in lieu of imminent discharge." The Tribunal relied on Procaccini "requesting operational information" from claimant, as well as Procaccini's actions removing claimant's desktop from her computer, locking the file cabinets, and "box[ing] other

documents used by [claimant] to perform her duties." The Tribunal also found that claimant did not intend to violate the no gossip policy, that any violation was not deliberate, wanton, or willful, and that claimant therefore was not disqualified from receiving unemployment benefits under N.J.S.A. 43:21-5(b) due to employee misconduct. Because no disqualifications applied, the Tribunal determined that claimant was entitled to receive unemployment benefits.

On August 4, 2017, the Board reversed the Tribunal's decision. The Board did not make any credibility determinations. The Board, however, felt "compelled to rewrite the Findings of Fact as those of the Appeal Tribunal do not reflect the record." Specifically, the Board made the following factual findings:

> [Claimant] was upset with the owner, who had asked her some questions about the files and payroll. The owner was not disrespectful toward [claimant]. The owner had cleaned the office, including [claimant]'s desk, prior to April 3, 2017. She did not remove the desktop that [appellant] was using or [claimant]'s belongings. The owner locked the personnel files, because they had confidential information. The owner intended to meet with [claimant] on April 5, 2017 to discuss with her the gossip policy. However, [appellant] resigned before she had the opportunity to do so. [Claimant]'s job was not in jeopardy at the time of her separation.

Based on those findings, the Board concluded that claimant left work voluntarily without good cause attributable to the work and was therefore disqualified from receiving unemployment benefits under N.J.S.A. 43:21-5(a).[2]

On appeal, claimant argues that the Board did not base its findings on substantial credible evidence in the record and ignored contrary evidence. We agree.

The Board's conclusion that claimant's job was not in jeopardy at the time she quit was based on factual findings that were not supported by the record. For instance, the Board found that Procaccini cleaned the office, including claimant's desk, prior to April 3, 2017. Although Procaccini said that she had cleaned the office in the past, she later clarified that she would "sweep it out occasionally," but admitted that she never, as she put it, "did a detail" like she did in this instance. There was no testimony that Procaccini had ever cleaned claimant's desk or locked the filing cabinets previously. The Board also found that Procaccini did not remove the "desktop" from claimant's computer, but Procaccini acknowledged that she inadvertently "minimized" the icons on claimant's desktop when she "backed up" claimant's computer.

---

[2]  The Board agreed with the Tribunal that claimant was not disqualified from receiving unemployment benefits for employee misconduct related to violating company policy under N.J.S.A. 43:21-5(b).

A-0324-17T4

More significantly, the Board found that Procaccini intended to meet with claimant on April 5, 2017, but that claimant "resigned before she had the opportunity to do so." Both parties testified, however, that they met on April 5, and that Procaccini asked claimant a series of questions about claimant 's remaining work, bookkeeping, computer passwords, and company procedures. It was at that point that claimant, fearing she was going to be fired "any minute" based on Procaccini's questioning, quit her position. The Board's finding that claimant resigned before the meeting was not supported by the evidence in the record.

The Board also either overlooked or underappreciated evidence in the record supporting claimant's claim. The Board did not consider that once claimant announced that she was quitting, Procaccini produced a pre-written letter of resignation and asked her to sign it. It also did not consider that a new receptionist/bookkeeper started work the same day claimant quit, which we have recognized is evidence indicating "imminent layoff or discharge[.]" Shuster, 396 N.J. Super. at 247.

Because the Board did not base its findings on substantial credible evidence in the record and overlooked contrary evidence in reaching its conclusions, its decision was arbitrary, capricious, and unreasonable.

Accordingly, we reverse the final decision of the Board, and remand the case to the Division of Unemployment and Disability Insurance to determine the amount of unemployment compensation benefits owed to claimant.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0324-17T4