69 N.J. Super. 338 (1961)
174 A.2d 251
MARTHA MEDWICK, CLAIMANT-APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1961.
Decided October 3, 1961.
*339 Before Judges CONFORD, FREUND and LABRECQUE.
*340 Mrs. Martha Medwick, claimant-appellant, argued the cause pro se.
Mr. Edward A. Kaplan argued the cause for the respondent (Mr. Clarence F. McGovern, attorney).
The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
This is an appeal from a decision of the Board of Review, Division of Employment Security, affirming the action of the Appeal Tribunal which in turn affirmed the determination of the Division, denying claimant's claim for unemployment benefits. She has appeared pro se throughout the litigation.
Claimant-appellant had been employed as a posting clerk for Kearfott Company, Inc. for some five and one-half years prior to the events complained of. She became pregnant and discontinued her employment on June 10, 1960, after having given one month's notice of her intention to leave. She thought that she was in her fifth month of pregnancy at the time of her leaving. Four days after leaving she applied for unemployment benefits, representing that she was ready, willing and able to work full time. Benefits were denied her on the ground that she was disqualified by reason of the fact that she had left her employment voluntarily without good cause. N.J.S.A. 43:21-5(a).
Claimant in her original application had given her pregnancy as the reason for leaving. At the hearing, while testifying that pregnancy was her principal reason, she added that she also found it necessary to leave because of warm and uncomfortable working conditions. Nevertheless, she claimed she was thereafter able to, available for, and actively seeking, work. N.J.S.A. 43:21-4(c).
The Unemployment Compensation Law was enacted to ameliorate the plight of workers who, through no fault of their own, become unemployed and who are able, willing and available for work. Krauss v. A. & M. Karagheusian, Inc., 13 N.J. 447 (1953). It was not enacted for the *341 purpose of allowing benefits for physical conditions or illnesses disabling a person from performing work. To meet the latter situations, save and excepting those compensable under the Workmen's Compensation Act, the Legislature enacted N.J.S.A. 43:21-4(f) and the Temporary Disability Benefits Law, N.J.S.A. 43:21-25 et seq.; Butler v. Bakelite Co., 32 N.J. 154 (1960). In both of these, recovery of benefits for disability due to pregnancy was specifically excluded. N.J.S.A. 43:21-4(g) (2); N.J.S.A. 43:21-39(c).
N.J.S.A. 43:21-5(a), on which respondent based its affirmance of the action of the Division of Employment Security, provided as follows:

"43:21-5. Disqualification for benefits.
An individual shall be disqualified for benefits:
(a) For the week in which he has left work voluntarily without good cause, and for each week thereafter until he has earned in employment (which may be with an employing unit having in employment one or more individuals) at least four times his weekly benefit rate, as determined in each case."
(See, however, L. 1961, c. 43, effective July 1, 1961, which now requires that such good cause be attributable to the work.)
Since claimant concededly left her employment voluntarily, the inquiry remains as to whether such leaving was without good cause. Berry, Whitson & Berry v. Div. etc., Dept. of Labor and Ind., 21 N.J. 73 (1956).
The statute itself does not define "good cause." However, in Krauss v. A. & M. Karagheusian, Inc., supra, the court discussed the subject in the following language (13 N.J., at pp. 464-465):
"* * * The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so, the termination of his employment is involuntary for the purposes of the act. In statutory contemplation he cannot then reasonably be judged as free to stay at the job. Unlike the statutes of some states, the *342 New Jersey act does not require that `good cause' be `connected with the work' or `attributable to the work.' Therefore, `good cause' may also lie in extraneous factors exerting compulsive pressure upon the claimant and causing him to quit. The test is well stated in Bliley Elec. Co. v. Unemployment Comp. Bd. of Review, supra, 45 A.2d 903:
`* * * The mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his personal and family problems, the authoritative demand of legal duties  these are circumstances that exert pressure upon him and imperiously call for decision and action.
When therefore the pressure of real not imaginery [sic], substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment.'"
The Division in denying benefits held:
"You left work voluntarily with Kearfott Company, Inc. on 6-10-60 due to pregnancy. You were not compelled to leave nor was your work affecting your health. Company policy allows you to work until the end of your 6th month of pregnancy. You give no compelling reason for leaving and left work without good cause."
The Appeal Tribunal, in affirming, held:
"Had this claimant left work to retire from the labor market because of pregnancy she would have done so with good cause. However, her insistence that she was able to work and seeking work despite her pregnancy negates such good cause. She has thus shown no compelling reason for leaving her job and is disqualified for benefits * * *."
The Board of Review affirmed the decision of the Appeal Tribunal.
*343 In passing upon the findings below, the test is not whether we would have come to the same conclusions were the original determination ours, but rather whether the fact finder below could reasonably have concluded from the proofs that the claimant's decision to quit was not, in good faith, compelled by considerations which, whether personal or work-connected, were substantial and real, and not trivial or frivolous. Berry, Whitson & Berry v. Division, etc., Dept. of Labor and Ind., supra.
In a proper case, unemployment brought about by pregnancy does not preclude eligibility for unemployment benefits. Thus, in Campbell v. Board of Review, 50 N.J. Super. 187 (App. Div. 1958), claimant left work in her sixth month of pregnancy because company policy required her to take a leave of absence at that time. She was available for work and was actively seeking work thereafter. And in Myerson v. Board of Review, 43 N.J. Super. 196 (App. Div. 1957), claimant, though still able to work, left at the end of the fifth month, when her union contract forbade her employment beyond that time. Both were held entitled to benefits. In the case sub judice, however, claimant was not required to leave at the time she did. The company's policy permitted her to continue work until the end of her sixth month of pregnancy. The decision to leave was thus her own. Campbell Soup Co. v. Board of Review, etc., 13 N.J. 431 (1953).
We conclude that the record before us amply justifies the factual findings appealed from. The claimant voluntarily left her employment at a time when she was able to continue working. She failed to establish good cause for her leaving under the tests set forth in Krauss v. A. & M. Karagheusian, Inc., supra.
Her pregnancy, standing alone, would not constitute such good cause. Cf. Schwartz v. Unemployment Compensation Board of Review, 169 Pa. Super. 620, 84 A.2d 364 (Super. Ct. 1951). Yet it was the sole reason originally given for her unemployment. She was apparently under the impression *344 that she automatically became eligible for unemployment benefits after five months of pregnancy. Thus she testified:
"Q. In other words, because you were pregnant was the chief reason you left your job? A. Yes.
Q. Then if you left the job because you were pregnant, why did you feel that you could collect unemployment benefits? A. Well, all the other girls I knew that left from other companies could collect; after five months they were eligible for unemployment."
While we do not question her motives in applying for benefits, she apparently failed to distinguish between pregnancy standing alone and pregnancy accompanied by actual or threatened injury to health due to the type of work performed. Thus:
"Q. No! They do not have a policy that they have to work, their policy is that if you wish to they will permit you to work. A. I know, but I know women who left there after three months or four months and they were able to collect unemployment; in fact, I know one girl who worked in the Blueprint Department, she got sick from the ammonia and couldn't work. She left at four months. She wasn't six-months pregnant and she collected all her checks.
Q. Now, do I understand your testimony: You left because you were pregnant but you still felt that you could work elsewhere and you were looking for work? A. I could have worked elsewhere.
Q. And while you were preferring to work part time, you, nevertheless, were indicating that you would have taken full-time work and you were watching the papers for full-time work; you did not stop work at Kearfott to stop work while you were pregnant; and the objection you had to continuing at Kearfott was that in the afternoon it became warm in the plant where you were working and you felt uncomfortable because of that? A. Yes."
Plaintiff's alleged dissatisfaction with her working conditions bears the earmarks of an afterthought. Kaminski v. Unemployment Compensation Bd. of Rev., 174 Pa. Super. 242, 101 A.2d 132 (Super. Ct. 1953). When originally interviewed concerning her application, she stated: "The work I was doing was not heavy and in no way affected my health." There was no medical testimony to the contrary. The discomfort from the heat under which she later alleges she labored, was no more than that of other employees. *345 On May 10 she had given her employer a month's notice of her intention to leave. She can hardly be said to have been affected by the heat at that time. There was no medical proof that the heat was injurious to her health. Ray v. Unemployment Compensation Board of Review, 189 Pa. Super. 104, 149 A.2d 536 (Super. Ct. 1959). She actually worked for a full month thereafter. Approximately two weeks after leaving, she signed the usual claim statement in which she said: "If I wanted, I could have continued to work."
There was, of course, no requirement that her place of employment be air-conditioned, nor did failure to so equip it justify cessation of work and payment of benefits. To accept such a contention would do violence to the rationale of the statute and its clear intent. Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily. Molton v. Unemployment Compensation Board of Review, 194 Pa. Super. 190, 166 A.2d 103 (Super. Ct. 1960); Pomorski v. Unemployment Compensation Bd. of Rev., 189 Pa. Super. 257, 150 A.2d 145 (Super. Ct. 1959).
The record fails to establish that the claimant's decision to quit was in good faith, compelled by considerations which were substantial and real, and not trivial or frivolous. Berry, Whitson & Berry v. Div., etc., Dept. of Labor and Ind., supra. She failed to establish any cause, of work-connected origin, which justified her leaving. There was no proof of physical or mental condition, or of necessitous circumstances, or of personal or family problems, or of demanding legal duties that exerted pressure upon her to leave. Such being the case, her leaving was without good cause and benefits were properly denied her.
It is well to note that even had a contrary finding been made, i.e., that because of her pregnancy she was unable to work, she would thereby have been adjudicated unable to fulfill the essential statutory conditions precedent, i.e., *346 that she was able to work, was available for work, and had demonstrated that she was actively seeking work. N.J.S.A. 43:21-4(c); Valenti v. Board of Review of U.C.C. of New Jersey, 4 N.J. 287 (1950).
Our attention has been called to the fact that by L. 1961, c. 43, effective July 1, 1961, N.J.S.A. 43:21-5(a), has been amended by the addition of a provision exempting from disqualification for unemployment benefits, women who leave or are separated from their work solely by reason of pregnancy. As has been pointed out, supra, the same amendatory legislation also provides that good cause, to justify leaving work voluntarily, must be attributable to the work. However, these provisions are not applicable to the claimant, since adopted subsequent to the events here involved, and in any event, no presently material change was made in N.J.S.A. 43:21-4(c) covering eligibility. It continues to require that the claimant be able to work, available for work and demonstrate that she is seeking work, and provides in addition that no woman shall be deemed to be able or available for work during the four weeks immediately before the expected birth of her child or the four weeks following. N.J.S.A. 43:21-4(c)(1).
It may also be noted that the Temporary Disability Benefits Law has likewise been amended to provide that pregnancy may be deemed to be a sickness for which benefits may be paid during the four weeks immediately preceding the expected birth and the four weeks immediately following. N.J.S.A. 43:21-29; N.J.S.A. 43:21-39(c). So too, N.J.S.A. 43:21-4(f) (1) (B) has been amended along similar lines.
The action of the Board of Review is affirmed, but without costs.