**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0824-17T4

TONIE HARRELL,

      Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF
LABOR, and DOW JONES
& COMPANY, INC.,

      Respondents.

_____

         Argued March 27, 2019 – Decided April 11, 2019

         Before Judges Nugent and Mawla.

         On appeal from the Board of Review, Department of Labor, Docket No. 124,221.

         Kevin J. Mahoney argued the cause for appellant (Kreindler & Kreindler, LLP, attorneys; Tonie Harrell, on the pro se briefs).

         Jana R. DiCosmo, Deputy Attorney General, argued the cause for respondent Board of Review (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton

Schaffer, Assistant Attorney General, of counsel; Jana R. DiCosmo, on the brief).

Respondent Dow Jones & Company, Inc., has not filed a brief.

PER CURIAM

Appellant Tonie Harrell appeals from an October 3, 2017 decision by the Board of Review, Department of Labor (Board), disqualifying her for unemployment benefits. We affirm.

We take the following facts from the record. Harrell worked as a supervisor for respondent Dow Jones & Company, Inc. from May 1, 2011, to May 16, 2017, before resigning from her position.

By way of background, in July 2015, Harrell's supervisor was promoted to manager. A female subordinate became the "team leader" on Harrell's team, reporting to Harrell. Based upon rumor, Harrell believed her supervisor and the team leader were engaged in a romantic relationship, against company rules. Beginning in August 2015, Harrell claimed the team leader would break the chain of command and report directly to Harrell's supervisor when she disagreed with decisions made by Harrell. Harrell had no personal knowledge or evidence to confirm the truth of the rumor. However, she reported the alleged relationship to her employer.

In October 2015, Harrell met with human resources to discuss the rumors and her concern the team leader was undermining her supervisory authority. A human resources representative informed her the supervisor and the team leader denied the existence of a relationship. The following day, Harrell and her supervisor had a conversation, and he advised her she was behind on work and her team was unhappy with her leadership. She perceived the supervisor's statements to be a "subtle threat."

In November 2015, the supervisor transferred the team leader out of Harrell's team. Harrell testified the transfer was without her input and caused her workload to increase by upwards of twenty hours per week. Harrell hired a new team leader, who she claimed took several months to learn the work, given its complexity.

One week later, Harrell's supervisor issued her a verbal warning for being inattentive during a meeting. Harrell testified the warning was retaliation for reporting the rumor of the alleged relationship and an example of a hostile work environment. She addressed these claims in an email to human resources. Human resources responded and met with Harrell to inform her an investigation of the claims did not yield any findings of harassment, hostility, or retaliation.

A-0824-17T4

As a result of her work conditions, Harrell testified she became "[h]ighly stressed," and began to develop symptoms of chronic hives and angioedema beginning in December 2015, which required medication and treatment by a specialist. Harrell turned to human resources, which expunged the verbal warning she received in 2015, from her record. She also asked human resources to find her a different position in the company. She applied for five different positions within the company without success.

In June 2016, Harrell's former team leader was promoted to supervisor and managed her own team, which subsequently became backlogged with work. As a result, Harrell's supervisor required each team, including Harrell's, to lend a team leader for eight weeks to assist the backlogged team. Harrell claimed losing her team leader required her to perform an additional two-to-four hours of work per day during the eight-week period. Because the backlog continued, the team leaders remained on loan for an additional seven weeks. Harrell claimed the news of her team leader's extended stay caused her hives to become aggravated.

In May 2017, Harrell was summoned to a meeting with her supervisor, who issued her another verbal warning. Without learning the reason for the

4

warning, Harrell announced her resignation, packed her belongings, and left the company.

Harrell filed an application for unemployment benefits, which was denied. She appealed to the Tribunal, which held a telephonic hearing. Harrell testified she suffered stress from the increased workload and the verbal warnings she had received, and was subject to a hostile work environment and retaliation from her supervisor. She also claimed the stress aggravated the hives and angioedema she developed in 2015.

The Tribunal also considered medical evidence from Harrell, namely, a medical note dated January 2016. The note indicated "the most likely diagnosis for [Harrell]'s hives and swelling is chronic idiopathic urticaria and angioedema." The note also indicated the doctor was "not at all convinced . . . these symptoms are due to either a drug or vaccine allergy." Notes of a previous visit to the same doctor regarding the same symptoms noted: "Important triggers include no known triggers." Harrell also adduced online references from the Mayo Clinic and National Health Service websites, which she claimed demonstrated a causal link between stress and the urticaria and angioedema.

The Tribunal affirmed the denial of benefits, and rejected Harrell's claims of retaliation and a hostile work environment. The Tribunal found she failed to

5

present any evidence the rumored relationship between the supervisor and the team leader was true. It noted Harrell "admit[ted] that the workload was for a few separate periods in time[,] . . . had definite end dates[,]" and "was not permanent nor intended or implied to be a permanent change in work conditions." Thus, the Tribunal concluded Harrell had not met her burden to demonstrate the "workload was retaliation or was the basis for a warning." Regardless, it noted Harrell admitted "there was a human resource representative who did act on [her] behalf." The Tribunal also found "[Harrell]'s medical evidence [did] not state . . . her impairments we[r]e caused by the job." The Tribunal concluded Harrell left work voluntarily without good cause attributable to the work and disqualified her for benefits pursuant to N.J.S.A. 43:21-5(a).

The Board affirmed the Tribunal's decision. This appeal followed.

I.

The scope of our review of an administrative agency's final determination is strictly limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). The agency's decision may not be disturbed unless shown to be arbitrary, capricious, or unreasonable or inconsistent with the applicable law. Ibid. "If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459 (1982)).

Thus, "[i]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. (alteration in original) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). We "must . . . give due regard to the opportunity of the one who heard the witnesses to judge their credibility." Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997) (citation omitted).

## A.

Harrell contends she demonstrated good cause for voluntarily leaving her employment because the stress in her workplace aggravated a medical condition. She contends the Tribunal "did not cite to, discuss or appropriately consider [N.J.A.C. 12:17-9.3(b)] in its decision." She claims the Tribunal "focuse[d] on 'cause' and not aggravation of the . . . health condition[.]" We disagree.

N.J.S.A. 43:21-5(a) disqualifies an applicant for unemployment benefits

> [f]or the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment, . . . and has earned in employment at least ten times the individual's weekly benefit rate, as determined in each case.

A-0824-17T4

"While the statute does not define 'good cause,' our courts have construed the statute to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Domenico v. Bd. of Review, 192 N.J. Super. 284, 287 (App. Div. 1983) (quoting Condo v. Bd. of Review, 158 N.J. Super. 172, 174 (App. Div. 1978)).

N.J.A.C. 12:17-9.3(b) states

> [a]n individual who leaves a job due to a physical and/or mental condition or state of health which does not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause "attributable to such work," provided there was no other suitable work available which the individual could have performed within the limits of the disability. When a non-work connected physical and/or mental condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work.

When an applicant for benefits demonstrates "through uncontroverted medical evidence[] that her disease has been and will be aggravated by the [work] environment[,] . . . [t]his constitutes 'good cause.'" Israel v. Bally's Park Place, Inc., 283 N.J. Super. 1, 5 (App. Div. 1995) (citation omitted). An applicant must demonstrate "the environment at her job aggravated her illness." Ibid.

The medical evidence presented by Harrell did not meet her burden to prove her work conditions aggravated her medical conditions. The medical notes from the physician who diagnosed Harrell with urticaria and angioedema do not suggest the workplace stresses caused or aggravated her conditions, let alone recommend she avoid workplace stress as a remedy for her medical issues. To the contrary, as we noted, one of the notes stated there were "no known triggers" for her conditions. Furthermore, the online medical references Harrell provided merely noted stress as one of the causes of the symptoms she displayed. They did not prove work environment stress was the cause for Harrell's aggravated symptoms. For these reasons, the Board's affirmance of the Tribunal's conclusion that the "medical evidence does not state . . . [Harrell's] impairments we[r]e caused by the job" was not arbitrary, capricious, or unreasonable.

B.

Harrell claims the retaliation and hostile work environment she experienced as a result of her complaint to human resources regarding the rumored romantic relationship demonstrated good cause for voluntarily leaving her employment. She asserts there was good cause to refuse the additional work hours and the warnings she received were unjustified. She argues the Tribunal

9

ignored evidence of the romantic relationship, which demonstrated the additional workload and the warnings were a form of retaliation.

An employee who leaves work for good, but personal, reasons is not deemed to have left work voluntarily with good cause. Brady, 152 N.J. at 213-14. Thus, an employee who leaves work for personal reasons is subject to disqualification under N.J.S.A. 43:21-5(a). Ibid.; see also Morgan v. Bd. of Review, 77 N.J. Super. 209, 212-13 (App. Div. 1962). "Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Domenico, 192 N.J. Super. at 288 (quoting Medwick v. Bd. of Review, 69 N.J. Super. 338, 345 (App. Div. 1961)). "The decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Ibid. (citing Krauss v. A. & M. Karagheusian, Inc., 13 N.J. 447, 464 (1953)). The reasons for leaving employment voluntarily for good cause attributable to the work must be based on "objective facts." Brady, 152 N.J. at 215, 219-20. "In scrutinizing an employee's reason for leaving, the test is one of ordinary common sense and prudence." Domenico, 192 N.J. Super. at 288 (citing Zielenski v. Bd. of Review, 85 N.J. Super. 46, 52 (App. Div. 1964)).

Furthermore, an individual is disqualified for unemployment benefits if they refuse to accept suitable new work offered by their employer. N.J.A.C. 12:17-11.5(a). "New work" is defined as

> [a]n offer of work made by an individual's present employer of substantially different duties, terms or conditions of employment from those he or she agreed to perform in his or her existing contract of hire. Examples of factors which may be weighed when considering whether there is a substantial change in the terms or conditions of employment which constitute "new work" include, but are not limited to, the employer's change of hours or shift, job duties, location, salary, benefits, work environment and health and safety conditions.
>
> [N.J.A.C. 12:17-11.5(a)(3).]

Good cause for refusal of suitable work "means any situation over which the claimant did not have control or which was so compelling as to prevent the claimant from accepting work. In order to establish good cause, the claimant must have made a reasonable attempt to remove the restrictions pertaining to the refusal." N.J.A.C. 12:17-11.4.

Here, the Tribunal noted there was no evidence in the record to demonstrate the alleged romantic relationship. Moreover, an investigation conducted by Harrell's employer yielded no causal link between her report of the alleged romance and her supervisor's attempts to discipline her. The

backlogged team required assistance from other teams in order to accomplish its work. Thus, Harrell's supervisor did not single her out and burden her with increased work hours, and the additional work load was temporary.

Finally, we have held a claimant must prove intentional harassment by a supervisor and "mere[] over-sensitiv[ity] to criticism" does not constitute good cause for leaving employment because, "whether warranted or not, [criticism] may be expected in the normal course of employment." Associated Util. Servs., Inc. v. Bd. of Review, 131 N.J. Super. 584, 589 (App. Div. 1974). Here, Harrell's first warning was vacated well before she decided to resign. The record does not reveal the reasons for the second warning because Harrell resigned before her employer could review the merits of the discipline. Therefore, the record lacks evidence of the intentional harassment necessary to prove retaliation and good cause.

The substantial credible evidence in the record supports the conclusion Harrell left her employment voluntarily and without good cause. The Board's decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0824-17T4