**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3974-22

JONATHAN FRANCO,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and CHOBANI, INC.,

     Respondents.

_____

Argued December 3, 2024 – Decided December 18, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the Board of Review, Department of Labor, Docket No. 278316.

Jonathan Franco, appellant pro se.

Kevin K.O. Sangster, Deputy Attorney General, argued the cause for respondent Board of Review (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Kevin K.O. Sangster, on the brief).

PER CURIAM

Plaintiff Jonathan T. Franco appeals from the July 27, 2023 Board of Review (Board), Department of Labor (Department), final agency decision affirming the Appeal Tribunal's determination that he was disqualified for unemployment benefits for his October 31, 2021 claim. We affirm.

I.

Franco worked for Chobani, Inc. from September 2018 until he resigned on November 1, 2020. He was employed as a full-time retail execution and sales specialist traveling daily to supermarkets as a vendor to promote the sale of Chobani dairy products. Along with sales, a component of Franco's job was to retrieve dairy products from in-store refrigerated rooms and restock display shelves to maximize sales. He typically visited six food stores a day.

On March 9, Franco visited a medical urgent care facility because he felt ill. A medical professional never performed a test because "the medical facility did not have the testing capability." Franco nonetheless believed he contracted the COVID-19 virus based on his symptoms. He remained out of work for approximately one week.

After working for several months during the onset of the pandemic, Franco became concerned for his welfare, as he believed there was insufficient social distancing in the food stores; he was working in high COVID-19 outbreak

regions; and Chobani provided insufficient safety measures. Chobani had provided gloves, hand sanitizer, and "cloth masks" once the Center for Disease Control recommended mask usage. After Franco relayed his safety concerns to a supervisor, Chobani altered his work schedule to permit early morning access to the food stores, which provided less interpersonal contact. He worked the revised schedule for approximately eight weeks before returning to his normal field routine.

In November, Franco filed an initial unemployment benefits claim and received benefits through September 18, 2021. As he had not resumed employment, Franco filed a second unemployment claim on October 31, which is at issue here.

In January 2022, the Deputy Director of the Division of Unemployment Insurance (Division) advised Franco by letter that his second benefits claim was denied. The director found Franco was disqualified for benefits because he had resigned from Chobani voluntarily due to fear of contracting COVID-19, which did not constitute good cause attributable to work. The letter also stated Franco provided insufficient evidence regarding any personal increased risk for contracting COVID-19.

A-3974-22

Franco appealed the director's denial of his benefits claim, contending he was eligible for COVID-19 "related unemployment benefits" because the Department's website listed an entitlement scenario as "quit his or her job as a direct result of C[OVID]-19." He argued cause for reversal existed because: the Division previously awarded him benefits; "Chobani's New York administrative offices . . . switched to virtual work"; he "work[ed] under unsafe conditions" in close contact with people in the food stores; he had contracted COVID-19 in early March 2020; he was validly concerned about an increased exposure risk during his employment, leading to his "departure from the company"; and he was "caused grave financial hardship."

On March 1, 2022, Franco had a telephonic hearing before the Appeal Tribunal. The appeals examiner noted Franco had separate claims, but the hearing was only on the recent "new claim." She recognized the Division had never sent a determination letter addressing his "prior claim dated November 1[], 2020."

Franco testified he resigned from Chobani because he felt unprotected "against the COVID[-]19 virus" and claimed a parent diagnosed with a medical illness created a "family situation." He relayed that at the onset of the pandemic he expressed safety concerns to a Chobani supervisor, and thereafter Chobani

permitted him to start work earlier in the morning, and he would only go to "four stores per day . . . to avoid exposure to customers." Franco admitted it was not possible to perform his job from home, but he believed it was unfair that Chobani permitted office employees to work from home. He had worked for months through the pandemic until his "personal circumstances changed." After expanding on the written reasons he had submitted to the appeals examiner, he also contended he was at a greater health risk because he is obese at five foot, eleven inches tall and 240 pounds. Further, he asserted that living with his parents and working for Chobani created a greater COVID-19 exposure risk for them. He had no medical documentation to memorialize his increased COVID-19 risk assertions.

After the appeals examiner advised Franco that the hearing did not involve his first filed unemployment claim, she advised him the issue would be raised with her supervisor. Because the Division had never addressed the benefits he originally received, she questioned whether "this was adjudicated correctly." The appeals examiner also advised Franco that while Chobani was not present for the hearing, it had provided the Division with a form response in September 2021, stating Franco "left for personal reasons." She explained the Division normally confronts a claimant with an employer's information, but "that[ is] why

we have the appeal process." Further, because Franco indicated he could provide medical records and documentation to support his contention that he was "medically at risk" if he remained working, she offered to adjourn the proceeding, which he accepted.

At the second hearing on March 30, Franco provided a March 9, 2020 physician note memorializing his medical visit. He admitted to having no medical records recommending he refrain from working due to COVID-19 risks. He testified that he feared "another outbreak in the winter months" and decided he "could no longer continue . . . at Chobani." After the appeals examiner inquired about his prior testimony indicating that he was medically advised to remain home due to a high-risk medical condition, Franco maintained he did not see a distinction between medical documentation of risk and his reason for resigning due to COVID-19. The appeals examiner referenced the adjournment notice she had sent Franco that memorialized that he "wishe[d] to present medical documentation to support his testimony that he was advised by a medical professional to remain home, as he would be considered a high risk." Franco conceded, "I was never told anything like that from a doctor." He referenced the Department's website that provided collection of unemployment insurance was permitted if a person quit as "a direct result of COVID[-]19."

6

The appeals examiner noted that Franco had filed his first claim for unemployment benefits and not Pandemic Unemployment Assistance (PUA) benefits. Further, Franco had also filed his second claim in October 2021 for unemployment benefits, as the PUA benefits had ended. Franco relayed he had contracted COVID-19 in March 2020 and suffered "long-term effects." Franco testified he actually did not leave Chobani based on a "fear of contracting the virus," but then he restated his safety concerns. He also acknowledged his resignation letter did not include any COVID-19 related reason.

The appeals examiner made clear to Franco she was only considering the Division's denial of his second benefits claim, not whether the Division was entitled to "a refund" for benefits Franco received from the first November 2020 claim. She advised him that the Department had likely not moved for a refund because it processed the benefits award incorrectly, and therefore, "it would probably be considered agency error."

On March 30, the appeals examiner issued a written decision, finding Franco was "disqualified for benefits . . . under N.J.S.A. 43:21-5(a), as he left work voluntarily without good cause attributable to such work." The appeals examiner found Franco failed "to show good cause for leaving due to a COVID-19 related reason," and his stated resignation reasons, that he "was fearful of

another outbreak and made the personal decision to resign," were insufficient to support his benefits claim. The appeals examiner reasoned Franco had provided no evidence from "a medical professional [that he was] to remain home due to any potential medical condition that would cause him to be a high risk in contracting the virus." She also found he failed to appropriately address his safety concerns with human resources, citing that "[a]n employee must do what is reasonable and necessary in order to preserve his employment and allow the employer an attempt to rectify the situation, prior to leaving the job." The appeals examiner specifically included that she did "not have jurisdiction to rule on any prior dates of claim." After Franco appealed the Appeal Tribunal's decision, the Board issued a decision, affirming the appeal examiner's reasons for denying Franco benefits.

On appeal, Franco contends the Board's decision was in error because the Department had incorrectly found the: "[a]ppellant voluntarily quit his job without good cause"; "[a]ppellant's civil burden of proof . . . had not been met"; "[e]mployer did meet the standard to provide a safe work environment during the C[OVID-]19 pandemic"; and "[a]ppellant . . . should be disqualified for unemployment benefits." He also argues reversal is mandated because of: "the [h]earing [e]xaminer's [s]tatements made on the record on March 1, 2022, and

8

March 30, 2022"; and "[t]he error[s] committed by the Department of Unemployment, the Deputy Director, and the Appeal Tribunal's decision of March 30, 2022."

II.

Our scope of review of an agency determination is limited. D.C. v. Div. of Med. Assistance & Health Servs., 464 N.J. Super. 343, 352 (App. Div. 2020). The agency's decision may not be disturbed unless shown to be "'arbitrary, capricious, or unreasonable,' or is unsupported 'by substantial credible evidence in the record.'" Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 155-56 (App. Div. 2022) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). Decisions "made by an administrative agency entrusted to apply and enforce a statutory scheme" are reviewed "under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). For a "final agency decision, such as that of the Board of Review, we defer to factfindings that are supported by sufficient credible evidence in the record." McClain v. Bd. of Rev., Dep't of Lab., 237 N.J. 445, 456 (2019); see also Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997).

"[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come

to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady, 152 N.J. at 210 (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)). We afford "[w]ide discretion . . . to administrative decisions because of an agency's specialized knowledge." In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020). An agency's discretion, however, "is not unbounded and must be exercised in a manner that will facilitate judicial review." Ibid. (quoting In re Vey, 124 N.J. 534, 543-44 (1991)).

We begin by noting this appeal is limited to the Board's decision affirming the Appeal Tribunal's determination that Franco was disqualified for unemployment benefits on his October 2021 claim. Specifically, the Board affirmed the Appeal Tribunal's finding that Franco was disqualified for benefits under N.J.S.A. 43:21-5(a) because he left work voluntarily without good cause attributable to work.

Under N.J.S.A. 43:21-5(a), employees who quit their jobs are disqualified for unemployment benefits unless they quit for "good cause attributable to" the work. "[G]ood cause" means "cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." Brady, 152 N.J. at 214 (quoting Domenico v. Bd. of Rev., 192

N.J. Super. 284, 287 (App. Div. 1983)) (internal quotation marks omitted); see also N.J.A.C. 12:17-9.1(b) (defining "good cause attributable to such work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment"). An employee's "decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Trupo v. Bd. of Rev., 268 N.J. Super. 54, 58 (App. Div. 1993) (quoting Domenico, 192 N.J. Super. at 288). Further, "[m]ere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Domenico, 192 N.J. Super. at 288 (quoting Medwick v. Bd. of Rev., 69 N.J. Super. 338, 345 (App. Div. 1961)). The employee bears the burden of showing good cause. N.J.A.C. 12:17-9.1(c).

Applying these principles, we affirm the Board's determination that Franco was disqualified for benefits on his second unemployment claim. Here, as the Board found, a review of the hearings demonstrates the appeals examiner completed a "careful analysis and [provided] the requisite findings to insure a just result." Bailey v. Bd. of Rev., 339 N.J. Super. 29, 33 (App. Div. 2001). Franco admitted that he resigned from work in November 2020 due to his safety

11

concerns regarding COVID-19 and because his "personal circumstances changed." He had also alleged part of the reason he resigned was related to medical issues. We note the appeals examiner adjourned the March 1, 2022 hearing to provide Franco an opportunity to produce evidence that he was forced to leave work for medical reasons or documentation verifying he was at a greater medical risk if exposed to COVID-19. At the March 30 hearing, Franco produced no medical records supporting his alleged necessity to resign and admitted no doctor had advised him to leave Chobani. He also admitted to resigning from Chobani based on his belief that COVID-19 outbreaks would worsen in the winter months.

Franco produced no competent evidence demonstrating he should have received benefits "for voluntarily leaving work" due to "working conditions [that we]re so unsafe, unhealthful, or dangerous as to constitute good cause attributable to such work." N.J.A.C. 12:17-9.4. His conclusory claims regarding safety concerns, differential treatment of Chobani's office employees, and possibly having COVID-19 in March 2020 are insufficient. See Brown v. Bd. of Rev., 117 N.J. Super. 399, 403-04 (App. Div. 1971) (stating "good cause" exists where a person's work "aggravates" a "preexisting disability"). Notably, Franco did not discuss his COVID-19 concerns with his supervisor or human

resources contemporaneously with his November 2020 resignation. Indeed, Franco admitted he did not mention COVID-19 as a cause for leaving in his resignation letter. Franco chose to leave Chobani on his own accord without any medical directive.

While we are mindful of Franco's expressed concerns, he failed to meet his burden of demonstrating sufficiently compelling cause attributable to his work. His decision to resign for personal reasons disqualified him for benefits, even if the reasons were understandable. See Utley v. Bd. of Rev., 194 N.J. 534, 544 (2008); see also Morgan v. Bd. of Rev., 77 N.J. Super. 209, 214 (App. Div. 1962). Applying our deferential standard of review, we discern no basis to disturb the Board's decision affirming the Appeal Tribunal's decision, which denied Franco's October 2021 unemployment benefits claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION