933 A.2d 641

RACHEL G. SHUSTER, APPELLANT v. BOARD OF REVIEW, DEPARTMENT OF LABOR, AND KEENAN MCALISTER EQUINE, INC., RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted September 24, 2007—Decided October 18, 2007.

242

Before Judges LINTNER, PARRILLO and SABATINO.

*Margolis Edelstein,* attorneys for appellant (*Ralph R. Smith, 3rd,* on the brief).

*Anne Milgram,* Attorney General, attorney for respondent Board of Review (*Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Ellen A. Reichart,* Deputy Attorney General, on the brief).

No brief was filed on behalf of respondent Keenan McAlister Equine, Inc.

The opinion of the court was delivered by

LINTNER, P.J.A.D.

Dr. Rachel Shuster, a veterinarian employed by Keenan McAlister Equine, Inc. (employer), appeals a final decision of the Board of Review (Board). The Board accepted the findings and opinion of the Appeal Tribunal and disqualified Shuster from receiving

unemployment compensation benefits. Shuster appeals and we reverse.

Shuster left her employment on May 3, 2006, and filed for benefits with the Division of Unemployment Insurance (Division) on May 30, 2006. A deputy with the Division found that she was eligible for benefits. The employer appealed the deputy's determination. Following a telephone hearing that took place on June 27 and July 25, 2006, the Appeal Tribunal found that petitioner was disqualified for benefits under *N.J.S.A.* 43:21–5(a) because she left work voluntarily without good cause attributable to such work.

We recite the relevant facts. Shuster was employed as an equine veterinarian, under contract from July 17, 2000, through May 3, 2006. On January 6, 2006, Dr. Daniel Keenan, one of the employer's principals, advised Shuster that he did not think her employment was working out and she was not a candidate for partner. Although he did not discuss it at the time, Keenan had received complaints from various clients telling him that they did not want Shuster to treat their horses. Keenan advised Shuster that she should start looking for another job and he would be looking for a new associate. Keenan testified that he did not terminate Shuster at that time but told her that she could continue working in the practice and he would give her the contractually required sixty-day notice when a new associate was hired.

On March 2, 2006, Shuster tendered a letter of resignation, giving the contractual sixty-day notice that she would be leaving on May 3, 3006. Shuster indicated that Keenan offered her the chance to resign so that her professional reputation would remain intact. Shuster testified that after the January meeting she came under tension on the job. However, when asked what occurred between January 6 and the submission of her resignation letter that caused tension at work, she was unable to provide a specific example. She responded, "[t]he bottom line was I was told to leave ... on January 6th and that I needed to look for other employment or whatever, but I needed to leave, and so that's what I did." Although she viewed the January meeting as a termi-

nation, she admitted that Keenan never told her that she was being "fired." Shuster's replacement began working on April 22, 2006.

In reaching its decision, the Appeal Tribunal relied on *N.J.A.C.* 12:17–9.5, entitled, "Voluntary Leaving Work Prior to Imminent Layoff or Discharge," to conclude that Shuster's discharge was not imminent because it was beyond sixty days from the time she met with Keenan in January. The Tribunal reasoned that because her potential discharge was not imminent, her leaving work because she was eventually going to be discharged and needed to look for new employment was not a sufficient cause for leaving the ranks of the employed to join the ranks of the unemployed to qualify for benefits.

■ On appeal, Shuster contends that she tendered her resignation with good cause attributed to her work. She argues that she would not have resigned had Keenan not advised her that her employment was not working out and that he was going to seek a replacement. She maintains that the fact that her replacement was hired only a few weeks prior to her departure date supports the conclusion that she resigned based upon a reasonable belief that her last date of employment was imminent.

*N.J.S.A.* 43:21–5(a) provides in pertinent part:

An individual shall be disqualified for benefits: (a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed ... and has earned in employment at least six times the individual's weekly benefit rate, as determined in each case.

■ Although the statute does not define "good cause," we have observed, where the reason is " 'sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed,' " good cause exists. *Doering v. Bd. of Review*, 203 *N.J.Super.* 241, 245–46, 496 A.2d 720 (App.Div.1985) (quoting *Associated Util. Servs., Inc. v. Bd. of Review*, 131 *N.J.Super.* 584, 586, 331 A.2d 39 (App.Div.1974)). " 'The decision to leave employment must be compelled by real, substantial and reason-

able circumstances ... attributable to the work.' " *Fernandez v. Bd. of Review,* 304 *N.J.Super.* 603, 606, 701 *A.*2d 747 (App.Div. 1997) (quoting *Domenico v. Labor & Indus. Dep't of Review,* 192 *N.J.Super.* 284, 288, 469 *A.*2d 961 (App.Div.1983)).

In *Fernandez,* the employee received a letter from AT & T that under its reorganization plan there would be a reduction in the number of employees in his division. A letter was sent to all the employees in the division offering a voluntary early retirement incentive package. The letter did not put any individual employee's job at risk. After reading an article in the *Wall Street Journal* indicating that the company was in dire financial straits, the employee took the voluntary severance package. Although we affirmed the Board's decision, we made the following observation, addressing the circumstances when a voluntary resignation could be construed as good cause associated with work:

> Mere speculation about job stability is insufficient to establish good cause. Rather, the surrounding circumstances at the time of voluntarily resigning must demonstrate a lack of suitable continuing work either concurrently or at a discernible and proximate point in time, together with statements or actions of the employer showing a very strong likelihood of imminent layoff. The circumstances must be so compelling as to indicate a strong probability that fears about the employee's job security will in fact materialize, that serious impending threats to his job will be realized, and that the employee's belief that his job is imminently threatened is well founded.
>
> [*Id.* at 606, 701 *A.*2d 747.]

The question to be answered is whether an individual who leaves a job "under the pressure of circumstances ... may reasonably be viewed has having [been] compelled" to such action. *Krauss v. A. & M. Karagheusian, Inc.,* 13 *N.J.* 447, 464, 100 *A.*2d 277 (1953).

Appellate courts have a limited role in reviewing decisions of an administrative agency. *State–Operated Sch. Dist. of City of Newark v. Gaines,* 309 *N.J.Super.* 327, 331, 707 *A.*2d 165 (App.Div.) (citing *Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980)), *certif. denied,* 156 *N.J.* 381, 718 *A.*2d 1210 (1998); *Campbell v. Dep't of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). There should not be an independent assessment of the evidence by the appellate court. *In re Taylor,* 158 *N.J.* 644,

656, 731 A.2d 35 (1999). The appellate court must accord a strong presumption of reasonableness to the decision of an administrative agency. *Smith v. Ricci*, 89 *N.J.* 514, 525, 446 *A.2d* 501, *appeal dismissed sub nom. Smith v. Brandt*, 459 *U.S.* 962, 103 *S.Ct.* 286, 74 *L.Ed.2d* 272 (1982); *City of Newark v. Natural Res. Council*, 82 *N.J.* 530, 539, 414 *A.2d* 1304, *cert. denied*, 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.2d* 245 (1980). Thus, the determinations of administrative agencies must be given great deference. *In re Freshwater Wetlands Prot. Act Rules*, 180 *N.J.* 478, 488–89, 852 *A.2d* 1083 (2004).

 While courts are not to act simply as a rubber stamp of an agency's decision, such a decision should only be reversed when "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." *Henry, supra*, 81 *N.J.* at 579–80, 410 *A.2d* 686; *Marro v. Dep't of Civil Serv.*, 57 *N.J.Super.* 335, 346, 154 *A.2d* 733 (App.Div.1959). As stated in *Taylor, supra*, 158 *N.J.* at 656, 731 *A.2d* 35 (quoting *Brady v. Bd. of Review*, 152 *N.J.* 197, 210–11, 704 *A.2d* 547 (1997)),

judicial review of an agency's decision is restricted to four inquiries:

"(1) whether the agency's decision offends the State or Federal Constitution;

(2) whether the agency's action violates express or implied legislative policies;

(3) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors."

In our view, the Appeal Tribunal and Board mistakenly relied on *N.J.A.C.* 12:17–9.5 to find that Shuster's separation was not imminent. That regulation provides:

If an individual leaves work after he or she is notified by the employer of an impending layoff or discharge, he or she shall be subject to disqualification for benefits unless the individual will be separated within 60 days. For purposes of this section, imminent layoff or discharge is one in which the individual will be separated within 60 days.

Both parties were obligated under contract to provide each other with at least sixty-day notice. Thus, the "within" sixty-day period set forth in *N.J.A.C.* 12:17–9.5 as constituting an imminent layoff

or discharge was not applicable to Shuster, who was contractually bound to give notice of at least sixty days. Moreover, the regulation only renders the employee "subject to disqualification for benefits unless ... separated within 60 days." It does not mandate it. Shuster "separated" from her employment eleven days after her replacement started work. Arguably, the appearance of her replacement implicated Shuster's imminent layoff or discharge, thus meeting the time constraints of the regulation.

Keenan specifically advised Shuster that her continued employment was no longer desired and that he intended to find a replacement. We are satisfied that he thus conveyed a very strong likelihood of imminent discharge, albeit, subject to Shuster's and the employer's contractual notice limitations. Under those circumstances, we conclude that Shuster is entitled to receive unemployment benefits because she established that she was compelled to resign because of a real, imminent, and substantial risk of losing her job.

Reversed.