OSTRER, J.A.D.
*168 Tamyra L. Cottman appeals from a November 23, 2016 Board of Review order, affirming the Appeal Tribunal's decision denying her unemployment benefits. The Tribunal found that Cottman voluntarily quit her job without good cause related to the work. See N.J.S.A. 43:21-5(a). We reverse.
Cottman quit after her child care arrangements fell through. She had been working as a residential counselor at a group home *169 for Quality Management Associates, Inc., since April 1, 2016. She worked overnight from 11:00 p.m. to 9:00 a.m., Saturday through Tuesday. Before her shift started on August 24, 2016, Cottman's babysitter unexpectedly quit. Cottman has three children, all with special needs. She testified that the eldest, who was thirteen at the time, was not responsible enough to care for the other two.
She explained that her employer's policy required her to find a fellow employee to cover her shift, if she could not come in. She tried calling everyone on her contact list, but no one was available.
Cottman testified that she spoke to her supervisor, who threatened she might be fired if she did not come in. Cottman testified, "I was like I might just (inaudible) and [the supervisor] was like well we [sic] just getting off probation. It's either you can come in or you might be fired. I wouldn't play with your time." Avoiding termination, Cottman chose to resign. The employer's representative did not dispute Cottman's version of the conversation. Indeed, she did not address it at all.
Cottman thereafter applied for unemployment benefits. The deputy denied her application, finding she was disqualified because she left work voluntarily without good cause attributable to her work. The Tribunal affirmed on the same ground, citing N.J.S.A. 43:21-5(a), as well as N.J.A.C. 12:17-9.1(e)(2), which expressly provides that voluntarily leaving work for the purpose of caring for children is not *537 good cause. The Board affirmed the Tribunal's decision without additional reasoning.
In her appeal, Cottman contends she was forced to quit her job, because she could not leave her children unattended during her August 24 shift, and her supervisor told her she might be fired if she did not come in.
We deferentially review the Board's decision, but shall reverse if it is arbitrary, capricious, or unreasonable, or lacks the support of sufficient credible evidence. Brady v. Bd. of Review, 152 N.J. 197, 210, 704 A.2d 547 (1997). With few exceptions, leaving work for personal reasons unrelated to the work, no *170 matter how reasonable, disqualifies an employee from receiving unemployment benefits. See N.J.S.A. 43:21-5(a) (disqualifying an individual who "has left work voluntarily without good cause attributable to such work");[1] Utley v. Bd. of Review, 194 N.J. 534, 544, 946 A.2d 1039 (2008) (stating that if an individual leaves "for personal reasons, however compelling, he [or she] is disqualified under the statute"); Brady, 152 N.J. at 213-14, 704 A.2d 547 ; Self v. Bd. of Review, 91 N.J. 453, 460, 453 A.2d 170 (1982).
However, when an employee knows that he or she is about to be fired, the employee may quit without becoming ineligible. Utley, 194 N.J. at 548-49, 946 A.2d 1039 (citing N.J.A.C. 12:17-9.5) ; Fernandez v. Bd. of Review, 304 N.J. Super. 603, 606, 701 A.2d 747 (App. Div. 1997) ("The circumstances must be so compelling as to indicate a strong probability that fears about the employee's job security will in fact materialize, that serious impending threats to his [or her] job will be realized, and that the employee's belief that his [or her] job is imminently threatened is well founded."). The regulation states, "If an individual leaves work after he or she is notified by the employer of an impending layoff or discharge, he or she shall be subject to disqualification unless the individual will be separated within 60 days." N.J.A.C. 12:17-9.5.
In Shuster v. Board of Review, 396 N.J. Super. 240, 933 A.2d 641 (App. Div. 2007), a veterinarian's supervisor told her that "he did not think her employment was working out"; "she was not a candidate for partner"; "she should start looking for another job and he would be looking for a new associate." Id. at 243, 933 A.2d 641. But, he never told her "she was being 'fired.' " Id. at 243-44, 933 A.2d 641. Almost two months later, the employee tendered a letter of resignation, effective sixty days hence, as her employment contract required. Id. at 243, 933 A.2d 641. She resigned rather than be fired to protect her professional reputation. Ibid.
*171 We reversed the Board's decision denying benefits, concluding the employer had "conveyed a very strong likelihood of imminent discharge," which justified the employee's resignation.[2] Id. at 247, 933 A.2d 641.
Here, neither the Tribunal nor the Board addressed Cottman's contention that she resigned when faced with a similar threat of termination. When an agency "overlook[s] or underevaluat[es] ... crucial *538 evidence," a reviewing court may set aside the agency's decision. See Trantino v. N.J. State Parole Bd., 166 N.J. 113, 192, 764 A.2d 940 (2001) (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964) ).
Cottman testified, without dispute, that her supervisor told her she might be fired. Although Cottman's use of the word "might" conveys some uncertainty, she obviously interpreted it as a near-certainty. She was reminded she had just completed her probationary period. She was told not to "play with [her] time." Rather than simply not appear for work and be discharged-and suffer the harm to her employment prospects-she resigned. We presume that most employees would, for purposes of future employability, prefer to resign rather than be fired. See Utley, 194 N.J. at 548, 946 A.2d 1039 (noting that claimant who resigned "chose to leave with dignity rather than be fired").
Notably, had Cottman not appeared for work after alerting her supervisor about her child care issue, and had been discharged, she would not have been ineligible for benefits. A person is disqualified from benefits for simple misconduct if he or she is discharged for an unauthorized absence from work "if he or she did not have good cause for being absent from work, or failed without justification to take steps necessary to notify the employer *172 of the absence and the reason therefore." N.J.A.C. 12:17-10.2(a).[3] Although "good cause related to the work" under the voluntary quit statute, N.J.S.A. 43:21-5(a), excludes compelling personal reasons, see Utley, 194 N.J. at 544, 946 A.2d 1039, "good cause for being absent from work" does include "any compelling personal circumstance, including illness, which would normally prevent a reasonable person under the same conditions from reporting to work." N.J.A.C. 12:17-10.2(b). Assuming that caring for children based on the sudden loss of child care is such a compelling personal circumstance, Cottman apparently would have been eligible for benefits if she had been discharged after failing to report to work.
The statutory and regulatory scheme generally requires an employee to take reasonable steps to preserve employment, rather than quit in the face of difficulty. We have construed "good cause related to the work" to mean "cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." Domenico v. Bd. of Review, 192 N.J. Super. 284, 287, 469 A.2d 961 (App. Div. 1983) (quoting Condo v. Bd. of Review, 158 N.J. Super. 172, 174, 385 A.2d 920 (App. Div. 1978) ). "A claimant has the 'responsibility to do whatever is necessary and reasonable in order to remain employed.' " Brady, 152 N.J. at 214, 704 A.2d 547 (quoting Heulitt v. Bd. of Review, 300 N.J. Super. 407, 414, 693 A.2d 155 (App. Div. 1997) ); see also Ardan v. Bd. of Review, 231 N.J. 589, 595, 177 A.3d 768 (2018) (slip op. at 26-27) (finding claimant who voluntarily left work due to a medical condition failed to prove there was "no other suitable work available," which she could have performed within the limits of her disability, therefore disqualifying her from benefits under N.J.A.C. 12:17-9.3 ).
However, the import of Shuster and N.J.A.C. 12:17-9.5 is that an employee need not wait to be fired when discharge is imminent.
*173 At that point, the employee *539 may resign and still be eligible for benefits.[4] Cottman resigned under these conditions.
Reversed.

The person is disqualified until he or she has become reemployed and works eight weeks. N.J.S.A. 43:21-5(a).

The Board held the discharge was not imminent because the employee was not threatened with discharge within sixty days. We held that the sixty-day period did not apply where, as in that case, the parties' contract required notice of at least sixty days. Id. at 246-47, 933 A.2d 641.

The disqualification lasts eight weeks, without a reemployment requirement. N.J.S.A. 43:21-5(b) ; N.J.A.C. 12:17-10.1.

We need not address the extent to which an employee may secure benefits by quitting, if the imminent discharge is for simple misconduct or worse, which would otherwise subject the employee to a period of disqualification.