**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4656-18T2

KENIA NUNEZ,

      Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and NEW JERSEY SCHOOLS
DEVELOPMENT AUTHORITY,

      Respondents.

_____

Submitted June 1, 2020 – Decided June 18, 2020

Before Judges Geiger and Natali.

On appeal from the Board of Review, Department of Labor, Docket No. 176,359.

Kenia Nunez, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review, (Donna Sue Arons, Assistant Attorney General, of counsel; Achchana C. Ranasinghe, Deputy Attorney General, on the brief.)

Respondent New Jersey Schools Development Authority has not filed a brief.

PER CURIAM

Appellant Kenia Nunez appeals from the June 3, 2019 final decision of respondent Board of Review (Board), which affirmed the April 9, 2019 decision of the Appeal Tribunal that appellant was disqualified from receiving unemployment benefits pursuant to N.J.S.A. 43:21-5(a). The Board denied appellant's benefits, finding she left her employment at respondent New Jersey Schools Development Authority (SDA) voluntarily without good cause attributable to her work. We affirm.

Appellant was employed by the SDA as the Deputy Director of Grants from October 15, 2018 to February 8, 2019. According to appellant's testimony before the Appeal Tribunal, the SDA's Deputy Chief of Staff, Patricia Cabrera, informed her on February 7, 2019 that the agency received a phone call from a reporter regarding allegations of sexual harassment lodged against appellant approximately two years earlier when she was the Township Administrator for Buena Vista Township. Cabrera received a copy of the complaint from the reporter via fax and, while reading through the complaint in appellant's presence, told appellant that "this does not look good for the agency" and "[t]his is not . . . good for you and . . . your perspective (sic) employment." Appellant

2                                                      A-4656-18T2

stated that Cabrera also told her that "the State Legislative Committee is still investigating . . . [a rape] allegation from the prior Chief of Staff [who] left under a scandal and this does not look good for the agency."

Appellant then provided Cabrera with a copy of the settlement agreement, as well as a letter from her accuser to the Township and to the Division of Civil Rights withdrawing his sexual harassment complaint. Cabrera acknowledged the settlement, but she emphasized the agreement did not specifically release appellant. Appellant stated that "although . . . [Cabrera] was sympathetic with my situation[,]" Cabrera informed her that "the perception of those documents . . . leaves [her] open to public judgment" and again that "this doesn't look good for the [SDA]." Appellant responded that there was no merit to the allegations, the Township Committee did not ask her to resign or step down, she was not fired, and she did not disclose it to the SDA because she "didn't think it was even relevant because none of that even happened here."

Eventually, the SDA Chief of Staff joined the meeting and left with Cabrera to discuss the situation outside of appellant's presence. Appellant was then instructed to go home and was informed that they would "deal with this tomorrow" as it was the end of the day and Cabrera and the Chief of Staff were "going to be [there] for a while."

3

The following day, appellant went to work in the morning but received a phone call about a water-related emergency in her basement. She returned to her home around 10:30 a.m. and received a call from Cabrera who informed her that the reporter was going to "release the story [about] you in the next hour or so." Appellant responded that she was in "an emergency situation and [she] cannot deal with this situation at all" and that "[t]his has nothing to do with my role at the SDA." She further informed Cabrera that she "[didn't] have time for this at all[,]" that she resigned effective immediately, and then "hung up and sent an email" confirming her resignation.[1]

When asked by the hearing officer whether she left her position due to conditions of the job or because "this issue had now followed [her] to this job and that was just too much to have to deal with[,]" appellant confirmed that it was the latter. She specifically stated that "[i]t's a big accusation and I just couldn't deal with that" as she was "under too much pressure and . . . didn't want to be subject . . . to an investigation." She concluded that "[i]t was already . . . an embarrassment[,] a humilitation[,] and [she] just couldn't [live through it again]."

---

[1] A copy of the email is not contained in the record.

A-4656-18T2

After resigning, appellant filed a claim for unemployment benefits on February 10, 2019. The Deputy of the Division of Unemployment and Disability Insurance (Deputy) denied appellant's application and imposed a disqualification for benefits "on the ground that the claimant left work voluntarily without good cause attributable to the work." Appellant appealed that determination to the Appeal Tribunal on March 14, 2019 and participated in a telephonic hearing. The SDA did not participate in the hearing.

In its April 9, 2019 written decision, the Appeal Tribunal first found that appellant resigned because "she did not want to have to deal with the harassment situation all over again[,]" but that she "was under no threat of imminent termination at the time she resigned." In upholding the determination of the Deputy, it noted that while it understood her decision to leave, "her reason for leaving was personal and unrelated to the work itself" as she "had no issues with the actual job, yet she left because the old harassment issue had come back." The Appeal Tribunal concluded that based on appellant's testimony, she "could have been working any job at that time, yet she would have left because that old issue resurfaced." Consequently, it reached the same conclusion as the Deputy that appellant was disqualified from unemployment benefits as she "left work voluntarily, without good cause attributable to the work."

5

Appellant filed a timely appeal of the April 9, 2019 Appeal Tribunal determination with the Board. In its June 3, 2019 decision, the Board, after reviewing the record, first determined that there was no valid ground for an additional hearing as appellant "was given a full and impartial hearing and a complete opportunity to offer any and all evidence" and affirmed the decision of the Appeal Tribunal. This appeal followed.

Our review of an administrative agency decision is limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). "[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). "If the Board's factual findings are supported 'by sufficient credible evidence, [we] are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459, (1982)). We also give due regard to the agency's credibility findings. Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997). "Unless . . . the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Brady, 152 N.J. at 210.

6

"The underlying purpose of the Unemployment Compensation Law 'is to provide some income for the worker earning nothing because he is out of work through no fault or act of his own.'" Futterman v. Bd. of Review, 421 N.J. Super. 281, 288 (App. Div. 2011) (emphasis omitted) (quoting Brady, 152 N.J. at 212). A person is disqualified for benefits:

> For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment . . . .
>
> [N.J.S.A. 43:21-5(a).]

An employee who leaves work voluntarily has the burden of proving that he or she "did so with good cause attributable to work." Brady, 152 N.J. at 218; N.J.A.C. 12:17-9.1(c). "While the statute does not define 'good cause,' our courts have construed the statute to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Domenico v. Bd. of Review, 192 N.J. Super. 284, 287 (App. Div. 1983) (quoting Condo v. Bd. of Review, 158 N.J. Super. 172, 174 (App. Div. 1978)). N.J.A.C. 12:17-9.1(b) defines "good cause attributable to such work" as "a reason related directly to the individual's employment, which

was so compelling as to give the individual no choice but to leave the employment."

An employee who leaves work for good, but personal, reasons is not deemed to have left work voluntarily with good cause. Brady, 152 N.J. at 213; Self, 91 N.J. at 457; Rider Coll. v. Bd. of Review, 167 N.J. Super. 42, 47-8 (App. Div. 1979). "Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Domenico, 192 N.J. Super. at 288 (quoting Medwick v. Bd. of Review, 69 N.J. Super. 338, 345 (App. Div. 1961)). "The decision to leave employment must be compelled by real, substantial and reasonable circumstances . . . attributable to the work." Shuster v. Bd. of Review, 396 N.J. Super. 240, 244-45 (App. Div. 2007) (quoting Fernandez v. Bd. of Review, 304 N.J. Super. 603, 606 (App. Div. 1997)). "[I]t is the employee's responsibility to do what is necessary and reasonable in order to remain employed." Domenico, 192 N.J. Super. at 288.

If "an employee knows that he or she is about to be fired, the employee may quit without becoming ineligible." Cottman v. Bd. of Review, Dep't of Labor & Workforce Dev., & Quality Mgmt. Co., 454 N.J. Super. 166, 170 (App. Div. 2018). Thus, "an employee need not wait to be fired when discharge is

imminent[,]" but instead "may resign and still be eligible for benefits." Id. at 172-73. The determination of whether a worker quit in the face of being fired calls for a fact-sensitive analysis "of all relevant factors." Utley v. Bd. of Review, 194 N.J. 534, 548 (2008). The facts must "'indicate a strong probability that fears about the employee's job security will in fact materialize, that serious impending threats to [the employee's] job will be realized, and that the employee's belief that his [or her] job is imminently threatened is well founded.'" Shuster, 396 N.J. Super. at 245 (quoting Fernandez, 304 N.J. Super. at 606).

Guided by these legal principles, we perceive no basis to disturb the Board's finding as appellant failed to satisfy the high threshold for establishing imminent discharge. Rather than testifying that her discharge was a certainty, appellant clearly stated that she resigned to avoid dealing with public scrutiny regarding the sexual harassment complaint emanating from her prior employment a second time. In her words, she "just couldn't deal with that[,]" was "under too much pressure[,]" and "didn't want to be subject . . . to an investigation" that was already embarrassing and humiliating. Appellant's reasons for resigning may have been understandable, but they were nevertheless personal.

Further, the discussions appellant had with Cabrera did not include language that could reasonably be interpreted as a "very strong likelihood of imminent discharge." See Shuster, 396 N.J. Super at 247. Although Cabrera expressed her initial concerns as to the effect public disclosure of the prior harassment complaint would have on the SDA, appellant and her prospective employment, Cabrera did not state that appellant would be fired, she needed to resign, or that she needed to start looking for another job.

To the extent appellant argues that she was expected to resign because the former SDA Chief of Staff resigned when confronted with a rape allegation, such an assumption on the current record is "[m]ere speculation . . . insufficient to establish good cause[,]" see Fernandez, 304 N.J. Super. at 606, particularly considering appellant advised Cabrera that the Township Committee did not ask her to resign, she was not fired, and rather than being accused of a serious crime, her accuser withdrew the sexual harassment complaint. We also note that appellant resigned before learning the results of the meeting Cabrera had with the Chief of Staff the night before and only after she learned a reporter would publish the fact that she was the subject of a prior harassment complaint.

In sum, we are satisfied that the determination that appellant left work voluntarily without good cause attributable to the work is amply supported by

substantial credible evidence in the record as a whole, and is not arbitrary, capricious, or unreasonable.

To the extent we have not specifically addressed any of appellant's arguments, it is because we consider them sufficiently without merit to require discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4656-18T2