**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3372-19

MICHAEL BRUNETTI,

    Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and PIPERNO RESTAURANT
GROUP, LLC,

    Respondents.

_____

> Submitted September 1, 2021 – Decided September 13, 2021
>
> Before Judges Geiger and Mitterhoff.
>
> On appeal from the Board of Review, Department of Labor, Docket No. 201057.
>
> Michael Brunetti, appellant pro se.
>
> Andrew Bruck, Acting Attorney General, attorney for respondent Board of Review (Sookie Bae, Assistant Attorney General, of counsel; Alexis F. Fedorchak, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Michael Brunetti appeals from the March 19, 2020 final decision of respondent Board of Review, Department of Labor (Board), which affirmed the January 16, 2020 decision of the Appeal Tribunal disqualifying appellant from receiving unemployment benefits pursuant to N.J.S.A. 43:21-5(a) because he left his employ at respondent Piperno Restaurant Group, LLC, (PRG) "voluntarily without good cause attributable to the work . . . ."  We affirm.

We derive the following facts from the record.  Appellant was employed by PRG as a full-time line cook and pastry chef from May 8, 2018 through October 26, 2019.  When he was hired, appellant told Dominic Piperno (Piperno), the chef and owner of PRG, that he suffered from depression, anxiety, and panic attacks.  Piperno allowed appellant to leave work early and to take time off when necessary.  This frequently left PRG without an employee to open the restaurant.

Appellant filed a claim for unemployment benefits on November 10, 2019.  In a December 9, 2019 determination, the Deputy Director of Unemployment Insurance determined that appellant was "disqualified for benefits from [November 3, 2019] and will continue to be disqualified until [he has] worked eight or more weeks in employment and have earned at least ten times [his] weekly benefit rate."  The deputy director found appellant "left work

voluntarily" and "without good cause" on November 8, 2019, when he "dropped the keys in the [restaurant's] mailbox" and "failed to report to a mandatory meeting to discuss several matters." The deputy director concluded these actions were "evidence of [appellant's] intention to sever the employer-employee relationship."

Appellant appealed the determination to the Appeal Tribunal, which conducted a telephonic hearing on January 16, 2020. During the hearing, appellant testified that his last day of work for PRG was October 26, 2019, and that he suffered from "major depressive disorder, generalized anxiety disorder, panic disorder, and post-traumatic stress . . . disorder." Appellant claimed he was put on unpaid involuntary medical leave but did not claim that his disabilities were work-related conditions.

Piperno testified that appellant's "absences had been a strain on the business and that they may have to part ways or figure out options for [appellant] to remain employed." Piperno told appellant he wanted to discuss the situation before a decision on appellant's employment status was made, directed appellant to put the keys to the restaurant in the mailbox, and to return to work for a meeting. On October 5, 2019, appellant reported to work, dropped the keys in the mailbox, and left without attending the meeting with Piperno. Appellant

contended that a meeting had not been scheduled and that he did not leave employment voluntarily.

Based on the testimony and text messages submitted, the Appeal Tribunal determined that appellant "initiated the separation." The Appeal Tribunal found:

> The employer provide[d] clear testimony that he wished to have a meeting to determine [appellant's] employment status based on his chronic absences due to his medical condition. [Appellant] assumed that he was being terminated and returned the company keys, but failed to meet with the employer. [Appellant] made a pitiable effort to preserve his job. [Appellant's] leaving [was] not with good cause attributable to the work. Therefore, [appellant] . . . is disqualified for benefits as of [November 3, 2019] in accordance with N.J.S.A. 43:21-5(a).

Appellant appealed the decision of the Appeal Tribunal to the Board. Based on the record, the Board found no need for further hearing and affirmed the decision of the Appeal Tribunal. In its March 19, 2020 decision, the Board echoed the finding of the deputy director, stating:

> although the employer may have told [appellant] that they might have to part ways, [appellant] was aware that the employer wanted to have a discussion before making a decision on the status of his job. Hence, [appellant's] failure to report to talk to the employer, whether with or without an appointment, is evidence of his intent to sever the employment relationship.

This appeal followed. Appellant argues:

4

THE APPEAL TRIBUNAL AND BOARD OF REVIEW ERRED IN THE DECISION THAT APPELLANT LEFT WORK VOLUNTARILY WITHOUT GOOD CAUSE BECAUSE APPELLANT WAS TERMINATED BY THE EMPLOYER AFTER THEIR PHONE MEETING.

Our review of an administrative agency decision is limited. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). "[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)). "If the Board's factual findings are supported 'by sufficient credible evidence, [we] are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Rev., 91 N.J. 453, 459 (1982)). We "must also give due regard" to the agency's credibility findings. Logan v. Bd. of Rev., 299 N.J. Super. 346, 348 (App. Div. 1997) (citing Jackson v. Concord Co., 54 N.J. 113, 117 (1969)). "Unless . . . the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Brady, 152 N.J. at 210.

"The underlying purpose of the Unemployment Compensation Law 'is to provide some income for the worker earning nothing because he is out of work through no fault or act of his own.'" Futterman v. Bd. of Rev., 421 N.J. Super.

5

281, 288 (App. Div. 2011) (emphasis omitted) (quoting Brady, 152 N.J. at 212).

A person is disqualified for benefits "[f]or the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment . . . ." N.J.S.A. 43:21-5(a). An employee who leaves work voluntarily has the burden of proving that he or she "did so with good cause attributable to work." Brady, 152 N.J. at 218 (citations omitted); N.J.A.C. 12:17-9.1(c). "While the statute does not define 'good cause,' our courts have construed the statute to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Domenico v. Bd. of Rev., 192 N.J. Super. 284, 287 (App. Div. 1983) (quoting Condo v. Bd. of Rev., 158 N.J. Super. 172, 174 (App. Div. 1978)). N.J.A.C. 12:17-9.1(b) defines "good cause attributable to such work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment."

An employee who leaves work for good, but personal, reasons is not deemed to have left work voluntarily for good cause. Brady, 152 N.J. at 213; Self, 91 N.J. at 456-57. "Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good

cause for leaving work voluntarily." Domenico, 192 N.J. Super. at 288 (quoting Medwick v. Bd. of Rev., 69 N.J. Super. 338, 345 (App. Div. 1961)). "The decision to leave employment must be compelled by real, substantial and reasonable circumstances . . . attributable to the work." Shuster v. Bd. of Rev., 396 N.J. Super. 240, 244-45 (App. Div. 2007) (alteration in original) (quoting Fernandez v. Bd. of Rev., 304 N.J. Super. 603, 606 (App. Div. 1997)). "[I]t is the employee's responsibility to do what is necessary and reasonable in order to remain employed." Domenico, 192 N.J. Super. at 288 (citing Condo, 158 N.J. Super. at 175).

However, if "an employee knows that he or she is about to be fired, the employee may quit without becoming ineligible." Cottman v. Bd. of Rev., 454 N.J. Super. 166, 170 (App. Div. 2018) (citing Utley v. Bd. of Rev., 194 N.J. 534, 548-49 (2008)). Thus, "an employee need not wait to be fired when discharge is imminent" but instead "may resign and still be eligible for benefits." Id. at 172-73. The determination of whether a worker quit in the face of being fired requires a fact-sensitive analysis "of all relevant factors." Utley, 194 N.J. at 548. The facts must "indicate a strong probability that fears about the employee's job security will in fact materialize, that serious impending threats to [the employee's] job will be realized, and that the employee's belief that his

7

job is imminently threatened is well founded." Shuster, 396 N.J. Super. at 245 (quoting Fernandez, 304 N.J. Super. at 606).

Guided by these legal principles, we perceive no basis to disturb the Board's finding as appellant failed to satisfy the high threshold for establishing imminent discharge. Appellant argues he was entitled to benefits because he was terminated by Piperno following their conversation and that no meeting was scheduled. The Appeal Tribunal had the opportunity to hear the testimony and assess the credibility of the witnesses. It found Piperno's version of the events to be more credible. The Board agreed.

The testimony established that appellant failed to meet with Piperno and turned in his company keys assuming that he was about to be terminated. After considering the conflicting accounts that appellant and Piperno gave about their communications, the Board agreed with the Appeal Tribunal that although Piperno may have told appellant that they "might have to part ways," appellant was aware that Piperno wanted to meet with him to discuss the status of his employment. Appellant had not been terminated at that point.

To allow appellant to receive benefits on these facts "would subvert the expressed policy of providing aid to those who are unemployed 'through no fault of [their] own.'" Yardville Supply Co. v. Bd. of Rev., 114 N.J. 371, 375 (1989)

8

(emphasis and alteration in original) (quoting Schock v. Bd. of Rev., 89 N.J. Super. 118, 125 (App. Div. 1965)).  Appellant "left work at a time when [his] employer had work for [him]," without doing "what was necessary and reasonable in order to remain employed."  Zielenski v. Bd. of Rev., 85 N.J. Super. 46, 53-54 (App. Div. 1964).

In sum, we are satisfied that the Board's determination that appellant left work voluntarily without good cause attributable to the work is amply supported by substantial credible evidence in the record, and is not arbitrary, capricious, or unreasonable.

To the extent we have not specifically addressed any of appellant's arguments, it is because we consider them to be without sufficient merit to require discussion in a written opinion.  R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3372-19