**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1387-19

WLADYSLAW DZIABA,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and STONE EXPRESS, INC.,

     Respondents.

_____

Submitted November 8, 2021 – Decided December 2, 2021

Before Judges Rose and Enright.

On appeal from the Board of Review, Department of Labor, Docket No. 182,722.

Giblin & Gannaio, attorneys for appellant (Brian T. Giblin, Sr., and Brian T. Giblin, Jr., on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent Board of Review (Jane C. Schuster, Assistant Attorney General, of counsel; Ryan J. Silver, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Wladyslaw Dziaba challenges the October 23, 2019 final decision of respondent, Board of Review, Department of Labor, which affirmed the September 4, 2019 decision of the Appeal Tribunal disqualifying him from receiving unemployment benefits pursuant to N.J.S.A. 43:21-5(a) because he left his employment at Stone Express Inc. "voluntarily without good cause attributable to the work." We affirm.

Appellant worked for Stone Express, Inc. (Stone) as a truck driver and builder from August 18, 2015, through May 1, 2019. He filed a claim for unemployment benefits as of April 28, 2019. In a May 22, 2019 determination, the deputy director of Unemployment Insurance found appellant was disqualified for benefits as of April 28 because he "quit" his job at Stone "voluntarily on [May 2, 2019]" and "without good cause attributable to the work." The deputy director further determined appellant left Stone "after a disagreement with the owner . . . . [and] did not try to resolve the problem with [his] employer before leaving." Additionally, the deputy director concluded these actions were "evidence of [appellant's] intention to sever the employer-employee relationship."

Appellant challenged the deputy director's decision before the Appeal Tribunal, which conducted telephonic hearings on June 25 and September 4,

2019. During the hearings, appellant testified that when he went to work on May 1, 2019, he and his boss, Steve Smith, argued. Appellant stated Smith was angry because he had asked appellant to run an errand for Smith's mother the day prior, and appellant had not completed the task. Appellant claimed that after the two argued, Smith told him to "do him a favor" and leave his office. While appellant admitted Smith "never said [he] was fired," he stated Smith told him, "I'll call you when I need you." Additionally, appellant stated that he left the job site after the argument but returned the following morning to turn in his company credit card and keys to Paul Lecca, Stone's operations assistant manager. However, there is nothing in the record suggesting Smith or another employee at Stone required appellant to return these items. Also, despite Lecca not being responsible for hiring or firing personnel, when appellant handed in his company keys and credit card, he remarked to Lecca that "he was done," and "he wasn't gonna put up with this anymore."

Smith, Lecca, and Stone's office manager, Jamie Pizza, also testified at the Appeal Tribunal hearing on September 4, 2019. Each witness confirmed Smith and appellant argued on May 1 and that appellant did not return to work after he dropped off company items to Lecca. Smith testified there were no problems between him and appellant "in the past," but that changed on May 1,

when Smith called appellant into his office. Smith testified he confronted appellant after learning appellant had driven Smith's personal pickup truck and failed to disclose damage to the vehicle. Smith testified that the truck was "checked in and checked out basically when someone uses it," and he believed appellant damaged the vehicle "[b]ecause he was the only one that was in that vehicle" the day a "quarter panel [on the truck] was . . . pushed [and] . . . bent in."

According to his testimony, Smith also "scold[ed]" appellant for not completing the errand he asked appellant to handle for Smith's mother. Smith testified that during the argument, appellant "got very nasty with [him]" so Smith informed appellant he was "gonna be suspended for a couple days," and he would call appellant "in a couple days," but to "[p]lease just leave." Smith stated appellant walked out of his office but "came back in[,] two seconds later, in front of everybody in the main office," and stated, "Steve, you know something? Why don't you just fire me? Just fire me. I don't understand this. Just fire me." With that, appellant "walked back out and . . . left."

Smith further explained that he had "no intentions of firing [appellant], but he was gonna be suspended for two or three days" and that he specifically told appellant he would be suspended. Additionally, Smith confirmed that

A-1387-19

although he was not present when appellant returned to Stone the next day to hand in his company credit card and keys, he understood appellant told Lecca he was not returning to Stone. Smith also testified he did not attempt to contact appellant by text, email or phone after appellant returned the company keys and credit card, and appellant did not report back to work after his conversation with Lecca.

Pizza's testimony corroborated Smith's statements. She stated that after appellant and Smith argued, appellant asked Smith, "why don't you just fire me," and Smith responded, "No, Walter, I'm not firing you." Pizza also confirmed Lecca told her on the morning of May 2 that appellant quit his job. On cross-examination, Pizza was asked if appellant would have been permitted to use company keys and a credit card, whether he was suspended or terminated, to which Pizza replied, "[w]e don't ask them to return [these items] if they're suspended; only if they're fired. If they're fired that day[,] when they're fired[,] we would get the credit card and have them sign off that no unauthorized charges were made."

Lecca testified that he did not know "all of the details of what happened," but knew appellant no longer worked at Stone. Lecca stated appellant "came in the next day after whatever happened," gave Lecca his company credit card and

keys, and said he was "done with this place" and was "not gonna put up with this anymore."

Based on the testimony of the witnesses, the Appeal Tribunal determined appellant was disqualified for benefits pursuant to N.J.S.A. 43:21-5(a) because he "left work voluntarily without good cause attributable to such work." The Appeal Tribunal specifically found appellant and Smith argued on May 1, 2019 regarding damage to Smith's personal vehicle and the errand for Smith's mother, but Smith "did not want to continue the argument, so [he] told [appellant] to go and that [Smith] would call [appellant] when [appellant] could come back to work." Additionally, the Appeal Tribunal concluded that same day, appellant returned to Smith's office and told Smith to "just fire" him, but Smith told appellant "he was not fired." Further, the Appeal Tribunal determined appellant went to Stone on May 2 to give back his office keys and company credit card, and never returned to work after telling Lecca "that he was done and that he was not going to put up with this anymore." The Appeal Tribunal concluded the "employer's actions in questioning [appellant] and sending [him] home to bring an argument between [the two] to an end were not unreasonable and did not give [appellant] sufficient cause to leave available work to become unemployed."

Appellant challenged this ruling. On October 23, 2019, the Board found no need for additional hearings and affirmed the Appeal Tribunal's decision.

Appellant now presents the following argument for our consideration:

THE CLAIMANT DID NOT LEAVE WORK VOLUNTARILY AND THEREFORE SHOULD NOT HAVE BEEN DISQUALIFIED FOR BENEFITS.

Appellant specifically contends that "the turning in of the keys and credit card, as well as the discussion with . . . Lecca, are insufficient to establish that he voluntarily left employment" because Smith told him to "leave" Stone, stated he would call appellant when he wanted him to return, but did not contact appellant after the May 1 argument. We are not persuaded.

Our review of an administrative agency decision is limited. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). "If the Board's factual findings are supported 'by sufficient credible evidence, [we] are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Rev., 91 N.J. 453, 459 (1982)). We also accord substantial deference to the agency's interpretation of the statute it is charged with enforcing. Bd. of Educ. v. Neptune Twp. Educ. Ass'n., 144 N.J. 16, 31 (1996) (citing Merin v. Maglaki, 126 N.J. 430, 436-37 (1992)).

"[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether [we] would come to the same

conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady, 152 N.J. at 210 (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App Div. 1985)). We "must also give due regard" to the agency's credibility findings. Logan v. Bd. of Rev., 299 N.J. Super. 346, 348 (App. Div. 1997) (citing Jackson v. Concord Co., 54 N.J. 113, 117 (1969)). "Unless . . . the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Brady, 152 N.J. at 210.

A person is disqualified for benefits "[f]or the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in employment[.]" N.J.S.A. 43:21-5(a). An employee who leaves work voluntarily has the burden of proving that he or she "did so with good cause attributable to work." Brady, 152 N.J. at 218 (citations omitted); N.J.A.C. 12:17-9.1(c). "While the statute does not define 'good cause,' our courts have construed the statute to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Domenico v. Bd. of Rev., 192 N.J. Super. 284, 287 (App. Div. 1983) (quoting Condo v. Bd. of Rev., 158 N.J. Super. 172, 174 (App.

Div. 1978)).  N.J.A.C. 12:17-9.1(b) defines "good cause attributable to such work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment."

An employee who leaves work for good, but personal, reasons is not deemed to have left work voluntarily for good cause. Brady, 152 N.J. at 213; Self, 91 N.J. at 456-57.  "Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Domenico, 192 N.J. Super. at 288 (quoting Medwick v. Bd. of Rev., 69 N.J. Super. 338, 345 (App. Div. 1961)).  "The decision to leave employment must be compelled by real, substantial and reasonable circumstances . . . attributable to the work." Shuster v. Bd. of Rev., 396 N.J. Super. 240, 244-45 (App. Div. 2007) (alteration in original) (quoting Fernandez v. Bd. of Rev., 304 N.J. Super. 603, 606 (App. Div. 1997)).  "[I]t is the employee's responsibility to do what is necessary and reasonable in order to remain employed." Domenico, 192 N.J. Super. at 288 (citing Condo, 158 N.J. Super. at 175).

However, if "an employee knows that he or she is about to be fired, the employee may quit without becoming ineligible." Cottman v. Bd. of Rev., 454 N.J. Super. 166, 170 (App. Div. 2018) (citing Utley v. Bd. of Rev., 194 N.J. 534,

548-49 (2008)).  Thus, "an employee need not wait to be fired when discharge is imminent" but instead "may resign and still be eligible for benefits."  Id. at 172-73.  The determination of whether a worker quit in the face of being fired requires a fact-sensitive analysis "of all relevant factors."  Utley, 194 N.J. at 548.  The facts must "indicate a strong probability that fears about the employee's job security will in fact materialize, that serious impending threats to [the employee's] job will be realized, and that the employee's belief that his job is imminently threatened is well founded."  Shuster, 396 N.J. Super. at 245 (quoting Fernandez, 304 N.J. Super. at 606).

Guided by these legal principles, we are convinced there was ample evidence in the record to support the conclusion appellant failed to satisfy the high threshold for establishing imminent discharge, particularly given the testimonial evidence that Smith declined to fire appellant when asked to do so, and instead, told appellant he was suspended.  To allow appellant to receive benefits on these facts "would subvert the expressed policy of providing aid to those who are unemployed 'through no fault of [their] own.'"  Yardville Supply Co. v. Bd. of Rev., 114 N.J. 371, 375 (1989) (quoting Schock v. Bd. of Rev., 89 N.J. Super. 118, 125 (App. Div. 1965)).

In sum, we are satisfied the Board's determination that appellant left work voluntarily without good cause attributable to the work is amply supported by substantial credible evidence in the record, <u>Rule</u> 2:11-3(e)(1)(D), and is not arbitrary, capricious, or unreasonable. To the extent we have not specifically addressed appellant's remaining contentions, we are persuaded they lack sufficient merit to warrant discussion in a written opinion. <u>R</u>. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1387-19