**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1951-22

IN THE MATTER OF
THE CERTIFICATES OF
MICHAEL D'ALESSIO,
STATE BOARD OF
EXAMINERS, NEW
JERSEY DEPARTMENT
OF EDUCATION.

_____

Argued September 11, 2024 – Decided October 4, 2024

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the New Jersey Commissioner of Education, Docket No. 5-7/22A.

James J. Uliano argued the cause for appellant Michael D'Alessio (Chamlin Uliano & Walsh, attorneys; James J. Uliano, of counsel; Andrew T. Walsh, on the briefs).

Michael Lombardi, Deputy Attorney General, argued the cause for respondent New Jersey Commissioner of Education (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Matthew Lynch, Deputy Attorney General, on the brief).

PER CURIAM

Appellant, Michael D'Alessio, a former Middletown Township school teacher, appeals from the January 23, 2023 order of the New Jersey State Commission of Education (Commissioner) affirming the State Board of Examiners' (Board's) revocation of his teaching certificates after a hearing conducted by the Office of Administrative Law (OAL) found he engaged in unbecoming conduct. Affording the strong deference due to administrative decisions, we affirm.

## I.

We glean the following largely undisputed salient facts and procedural history from the record. Appellant taught special education, holding teaching certificates as "teacher of the handicapped" and "teacher of elementary school education grades K-8 with eligibility for advanced standing." In September 2019, the Board issued an Order to Show Cause regarding why it should not revoke appellant's teaching certificates after his arrest at the scene of a drug transaction within a school zone. In August 2021, seven witnesses, including appellant, testified at the two-day hearing before the administrative law judge (ALJ).

Police witnesses testified they were investigating appellant's close family friend, Kevin McNamara, for drug distribution, specifically his obtaining filled

prescriptions from a specific pharmacy and selling the narcotics in the parking lot. While conducting surveillance at that location on October 15, 2021, police observed McNamara enter the pharmacy around 9 a.m., obtain prescription drugs, exit the pharmacy, and walk to a car in the parking lot where he distributed a portion of the drugs to the car's occupant before entering the passenger seat of appellant's vehicle, where appellant waited in the driver's seat. After police approached and ordered appellant and McNamara from the car, they found loose prescription pills in the vehicle and appellant's fourteen-month-old son in the rear seat. Investigation revealed McNamara paid for the prescription using appellant's credit card, and suboxone was found in or around appellant's wallet. The transaction occurred within 1,000 feet of an elementary school.

Police charged appellant with conspiracy, N.J.S.A. 2C:5-2(a)(1), possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1), distribution of CDS within 1,000 feet of a school, N.J.S.A. 2C:35-7(a), distribution of CDS within 500 feet of public housing, N.J.S.A. 2C:35-7.1(a), and endangering the welfare of a child, N.J.S.A. 2C:24-4(a). He entered the pretrial intervention program (PTI) in 2019, pleading not guilty to one count of third-degree possession of CDS (Suboxone), N.J.S.A. 2C:35-10(a)(1), and in

3

June 2020, successfully completed the twelve-month PTI diversionary term resulting in dismissal of the charges.

McNamara testified that he "grew up with [appellant's family]" and worked "on and off" for the family's bagel shop "for years," explaining the family would "pay to help [him] with [his] bills to get [his] life straight." Appellant's father testified and confirmed the relationship with McNamara was such that "at times he was like [a] third son." McNamara testified appellant's family was aware of his "opiate addiction."

Regarding the incident and arrest, McNamara explained he asked appellant for a ride to the pharmacy to pick up his prescriptions for Oxycodone, Xanax, and Adderall. He explained appellant frequently loaned him money, and on this morning, appellant provided his credit card to McNamara to obtain his prescriptions. While appellant waited in the car, McNamara obtained the prescription and gave "ten or twelve" of those pills to a "friend" in another car in the parking lot. McNamara claimed that when he returned to appellant's car and returned appellant's credit card, the suboxone "must have fallen with it . . . ." He claimed his pills fell in the car when the police approached.

Appellant testified that he had no knowledge of McNamara's drug activity, describing him as "a drifter" and "an acquaintance" who "always had a drinking

problem." On the day of the incident, appellant recounted agreeing to give McNamara a ride to the pharmacy after returning from the pediatrician with his sick child still in the car. Appellant claimed his attention was on his son until McNamara returned to the car and placed the receipt in appellant's wallet while "opening and fidgeting around with some of his pills . . . ." When the police approached, appellant repeatedly stated he was "just giving [McNamara a ride]." He denied any knowledge of the drug transaction.

Appellant had been a teacher in Middletown since 2004 and obtained a master's degree in education in 2007. There was no history of discipline or misconduct prior to this incident. After his arrest and two years' administrative leave, appellant returned to teaching. A coworker testified, describing appellant as an "excellent teacher," who is "always prepared" and always performs "to the best of his ability." Appellant's therapist testified about the serious impact of the incident on appellant's life.

On February 15, 2022, the ALJ determined appellant's "financially facilitating the illicit drug acquisition in a school zone constitute[d] conduct unbecoming of a teacher" warranting revocation of appellant's teaching certificates. In concluding appellant "knew or should have known of McNamara's addictions," the ALJ first assessed appellant's credibility, finding

A-1951-22

him "very agitated" in demeanor and "less than credible" in his denials. Specifically, the ALJ found appellant lacked credibility as McNamara was "sufficiently close to the family and business" to render a lack of "knowledge [of McNamara's drug addiction] implausible" and rejected McNamara's testimony accepting responsibility as "[h]e would say anything to support the D'Alessio's." Ultimately, the ALJ determined by a preponderance of the evidence that appellant's conduct fell "far below acceptable standards" and "display[ed] a clear lack of judgment." The ALJ further found appellant's history as a "good teacher" did not mitigate against revocation.

Appellant filed exceptions with the Board, challenging the ALJ's credibility and factual findings, arguing the evidence was at best inconclusive regarding his involvement in McNamara's drug transaction. He challenged the recommended revocation, urging the ALJ disregarded his teaching record in determining the appropriate outcome for this single incident.

On May 19, 2022, after consideration of the ALJ's findings and the parties' submissions, the Board adopted the ALJ's findings. The Board found the ALJ's credibility and factual determinations were supported by the record and, while recognizing appellant's otherwise unblemished employment history, concurred

that appellant engaged in unbecoming conduct requiring revocation of his teaching certificates.

The Commissioner accepted the Board's determination, finding the credibility and factual findings were grounded in the record and the revocation was appropriate based on the evidence, clarifying that the decision was "not [based on appellant's] acceptance into the PTI program." The Commissioner agreed the record showed appellant "facilitated possession and distribution of a CDS . . . with knowledge that his [fourteen]-month-old son was in his vehicle." In imposing revocation, the Commissioner emphasized the "heavy duty" imposed on teachers entrusted with the care of children. This appeal followed.

## II.

On appeal, appellant argues the Commissioner's revocation decision was arbitrary, capricious, and unreasonable, the ALJ's credibility determinations and findings lacked sufficient credible evidence in the record, and the resulting revocation of his certificates was excessive and improper. We disagree.

## III.

The scope of judicial review of a final agency determination is very narrow. See Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018); see also In re Carter, 191 N.J. 474, 482 (2007). "A strong

presumption of reasonableness" attaches to the actions of an administrative agency. Shuster v. Bd. of Rev., Dep't of Lab., 396 N.J. Super. 240, 246 (App. Div. 2007) (citing City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). This weighty presumption further strengthens when, as in the present case, the agency's decision concerns its particularized expertise. See Parsells v. Bd. of Educ., 254 N.J. 152, 162 (2023). An appellate court will not disturb such a quasi-judicial determination absent a clear showing "that it was arbitrary, capricious, or unreasonable, or that it lacked fair support in the evidence; or that it violated legislative policies . . ." Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963); see also Allstars Auto Grp., Inc., 234 N.J. at 157.

We similarly accord great deference to an agency's determination of appropriate sanctions. In re Herrmann, 192 N.J. 19, 28 (2007). On review, "the test . . . is 'whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" Id. at 28-29 (quoting In re Polk, 90 N.J. 550, 578 (1982)). "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." In re Herrmann, 192 N.J. at 29. Unless the agency's actions were wholly unsupported by the evidence, we may not supplant our judgment, even if divergent, for that of an agency entrusted

with gatekeeping its specific field of concern by application of its unique expertise.

## IV.

Here we find sufficient credible evidence in the record to anchor the Commissioner's determination that appellant engaged in conduct unbecoming a teacher warranting the revocations of his certificates. As the Board stated, "[t]eachers . . . are professional employees to whom the people have entrusted the care and custody of . . . school children. This heavy duty requires a degree of self-restraint and controlled behavior rarely requisite to other types of employment."

Under N.J.A.C. 6A:9B-4.4(a), the Board "may revoke or suspend the certificate(s) of any certificate holder on the basis of demonstrated inefficiency, incapacity, conduct unbecoming a teacher, or other just cause." Unbecoming conduct is conduct "'which adversely affects the morale or efficiency of [an agency]' or 'has a tendency to destroy public respect for [government] employees and confidence in the operation of [public] services.'" Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 13 (2017) (quoting In re Young, 202 N.J. 50, 66 (2010)). A finding of unbecoming conduct "need not be predicated upon the violation of any particular rule or regulation, but may be based merely upon the

violation of the implicit standard of good behavior" expected of one in a public position.  Id. at 13-14 (quoting Karins v. City of Atl. City, 152 N.J. 532, 555 (1988)).  "The touchstone . . . [is] the certificate holder's 'fitness to discharge the duties and functions of one's office or position.'"  Young, 202 N.J. at 66 (quoting In re Grossman, 127 N.J. Super. 13, 29 (App. Div. 1974)).

Here, the record reflected appellant transported McNamara, a suspected drug user and distributor, to a pharmacy to pick up prescriptions for Oxycodone, Xanax, and Adderall.  Appellant also paid for those prescriptions.  While appellant waited in his car with his fourteen-month-old child, McNamara returned to the parking lot and distributed those drugs to the occupant of another car near a school.  McNamara reentered appellant's car, returned the receipt for the pills and ingested some, spilling loose pills in the car.  Suboxone was found in or near appellant's wallet.

The ALJ and subsequently the Board and Commissioner reasonably rejected what was determined to be appellant's self-serving, disingenuous denial of knowledge of the drug transaction or McNamara's drug addiction based on the lifelong relationship between the two, rooted in testimony in the record.  The respective decisions show no improper weight was placed on appellant's resulting arrest, charges, or acceptance of PTI.  We see no reason to disturb the

Commissioner's determination that appellant's behavior was conduct unbecoming a teacher entrusted with the well-being of children.

Further, the record and respective decisions reflect that consideration was given to appellant's otherwise unblemished teaching history. Importantly, a singular incident, sufficiently flagrant, may support revocation. See Carter, 191 N.J. at 484-85 (recognizing that "some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record"). As such, we do not find the decision to revoke the teaching certificates shocks one's sense of fairness. The record amply supported a finding that appellant facilitated the dangerous distribution of narcotics in a public parking lot within 1,000 feet of a school zone during the day, while his child was in the car. Appellant has not demonstrated the Commissioner's chosen discipline was arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION